CLARENCE C. DAVIS *vs.* MAX MAISLEN ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS AND AVERY, Js.

Argued November 2d, 1932—decided March 21st, 1933.

*Isaac Nassau,* with whom was *Louis Nassau,* and, on the brief, *Francis P. Rohrmayer,* for the appellants (defendants).

*Joseph Solomon,* with whom was *Moses A. Berman,* for the appellee (plaintiff).

HAINES, J. The finding is that the defendants Maislen, Kupperstein and Hoffson were all real-estate dealers, and Kupperstein was also a builder, and all were experienced in real estate and mortgage matters and often operated together in real-estate deals and were frequently together at the office of Maislen. The plaintiff had been employed for many years by Maislen, Hoffson and the Maison Company, and had full

confidence in Maislen and was easily influenced by him in financial matters. Maislen and Hoffson were brothers-in-law and the son of Kupperstein was the son-in-law of Maislen, while Hoffson and his wife were two of the three directors of the Maison Company. Maislen at times represented and acted for this company.

In 1917 Maislen transferred property known as 30-32 Martin Street, Hartford, to the plaintiff subject to a first mortgage of $3000 held by a bank, and took from plaintiff a second or purchase-money mortgage for $5000, and this mortgage was paid in instalments from time to time by the plaintiff and fully paid before December, 1928. After the final payment and in the same month, Hoffson took a transfer of the same property from the plaintiff subject to the first mortgage of $3000, and gave the plaintiff a second mortgage on the property for $2700. In March, 1929, Hoffson transferred the property to Harry White subject to both mortgages. In July, 1929, Maislen induced the plaintiff to foreclose the second mortgage against White and thus plaintiff obtained absolute title again in November, 1929. The next day Hoffson took a transfer of the property from the plaintiff and gave the latter a second mortgage of $2200. One week later Hoffson transferred the property to Kupperstein at a stated price of $11,700, which was known by the defendants to be far in excess of its value, and took back a third mortgage from Kupperstein for $6500. Thus the property stood in the name of Kupperstein with a first mortgage for $3000, a second mortgage for $2200, and a third for $6500. Two days later Maislen called the plaintiff to his office and told him that Kupperstein wished to pay the $2200 second mortgage, and these three then went together to the office of a notary public and the plaintiff signed a release for

the $2200 mortgage and accepted therefor two of Kupperstein's checks, one for $500 and another for $1700, after being informed by Maislen that Kupperstein had plenty of money to meet the checks and was the owner of the Parcel Post Building in Hartford, neither of which statements was true. During November and December, 1929, and January, 1930, Kupperstein never had a balance of more than $716 in the account on which the $500 check was drawn and the personal account showed a balance in November and December, 1929, of less than thirty cents. The finding is that Kupperstein did not intend to pay the $1700 check.

Before taking title to the property from Hoffson, Kupperstein claimed to have advised with Maislen. This transfer, on a false valuation of $11,700 and the giving back of a third mortgage from Kupperstein to Hoffson for $6500, is found to have been a part of the plan to defraud the plaintiff and enable the defendants to later bring this into the position of a second mortgage. The plan was further prosecuted by fraudulently procuring a release of the plaintiff's mortgage and the giving of Kupperstein's worthless check for $1700 as part consideration, and thus making the $6500 mortgage held by Hoffson a valid second mortgage. When arranging for this release by the plaintiff, Maislen, Hoffson and Kupperstein knew that the plaintiff was to leave for Chicago the following day. Plaintiff went to Chicago and remained until May, 1930. When the check for $1700 was returned as worthless, the plaintiff's son consulted with Maislen, who told him that in order to protect the plaintiff he would procure a mortgage from Kupperstein of equal protection as that which he had released, and both Maislen and Kupperstein went with the plaintiff's son to the notary's office where a third mortgage to the plaintiff for $2200 on the same property was executed

by Kupperstein in return for the check of $1700 which was then delivered to Maislen and Kupperstein. Maislen, Hoffson and Kupperstein fraudulently advised the son to accept this mortgage and he was inexperienced in such matters and believed he was getting as good security for his father as he had previously had. The same day Maislen took the plaintiff's son to the town clerk's office to record this third mortgage.

Soon afterward Hoffson transferred the property to a man named Hurwitz, but the latter did not assume the mortgages. Some time afterward Hoffson assigned the $6500 mortgage, now a second mortgage, to the Maison Company, and about three months later this company brought a foreclosure and the third mortgage held by the plaintiff was foreclosed out. After this foreclosure the plaintiff, who still relied on Maislen, was advised by the latter that in order to make him secure he would have Hurwitz transfer to him another piece of real estate in Hartford, which was occupied by colored tenants, though Maislen knew there was no equity in that property. The plaintiff was to keep title to this property until he was able from the rents to obtain the money due him and then transfer the property back to Hurwitz. The plaintiff retained title a few months under this arrangement, but was required to expend $200 for upkeep and was able to collect only $75 in rent. The plaintiff was financially unable to keep the property and so lost it. The trial court found he was not fully aware of the fraud and conspiracy involved in the foregoing transactions by the defendants until shortly before this action was brought, and at no time did he waive his right to claim damages therefor.

Errors are assigned in finding certain facts claimed to be without evidence to support them. In a "waiver" of some of their claims of error, printed at the end of

the record, the appellants state that certain excerpts of evidence which appear in Part 2 of the finding are "all the evidence necessary" for us to determine these questions. That evidence is only that which was objected to upon the trial and is inserted in the finding to enable us to pass upon its admissibility.

In determining whether a subordinate fact is found without evidence, the evidence must be "separately designated as an . . . exhibit" and consist of either the entire evidence or such excerpts as are thought by either party or the trial court to be material to the question, and this must be certified by the official stenographer and then "shall be certified by the court, printed and become a part of the record." Rules for Appellate Procedure, § 8. When this appears in the record, it will be "taken as embracing all the material evidence adduced at the trial as to the points in question unless the contrary appears from the record, it being presumed that the judge performed his duty and that there was no other evidence deemed by him to be material." *Haugh* v. *Kirsch,* 105 Conn. 429, 432, 135 Atl. 568. We would not be justified in rejecting the trial court's finding of a subordinate fact upon a mere reference to certain evidence in the record, printed for an entirely different purpose and uncertified. The rule is salutary and should be complied with. The findings must stand.

One of the defendants' assignments of error is the action of the trial court in denying their motion for a more specific statement. The first four paragraphs of the motion were properly denied, since all the facts demanded were already accessible to the defendants.

Only as to the last paragraph is this assignment pursued in argument and brief. This asked for a specification of the acts committed by defendants Maislen and the Maison Company to cheat and defraud. This

was also properly denied, since the specific acts upon which the plaintiff relied were stated in detail in the complaint and as having been committed in furtherance of a conspiracy in which all the defendants, including the defendants Maislen and the Maison Company, joined.

Another assignment is in overruling certain claims of law, essentially but two in number, (1) that the defendants were not guilty of fraud or conspiracy to defraud the plaintiff as charged, and (2) that the plaintiff was precluded from recovery by taking part in the transactions which occurred after the dishonoring of the check of $1700 and that these transactions legally discharged the obligation thereby created. The first claim does not merit discussion. The second must be determined by a consideration of the finding as it stands.

To create an estoppel and foreclose the plaintiff, it was necessary to show that in one or more of the transactions in which he participated after his discovery that the $1700 check was worthless, he knew that he had a claim upon the defendants for fraudulent action they had taken against him and that he thereupon accepted the worthless mortgage or the worthless deed of the Hurwitz property, with the intent to thereby release his claim. No fact in the finding tends to establish that situation; on the contrary, it is found by the trial court as a fact that the plaintiff did not know, until after all these acts had taken place and the object of the conspiracy attained, that these defendants had conspired to defraud him of his property, and not until a short time before this action was brought, did the plaintiff have full knowledge of their plan and of the false and fraudulent character of their representations to him. There clearly was no intentional relinquishment by the plaintiff of a known right and he was

not estopped from claiming damages in this action for the whole fraudulent proceeding of the defendant conspirators.

Another error is assigned in the admission of the evidence of four witnesses called by the plaintiff, all of whom testified to other real-estate transactions by some or all of the defendants in what were claimed to be acts of cheating and defrauding of parties other than the plaintiff; together with files of the Superior Court in Hartford County in actions brought against some of these defendants based upon these other claimed fraudulent transactions. Three such files were submitted to the court and inspected and judicial notice thereof taken by the court.

One of the witnesses, Powers, called by the plaintiff, was the plaintiff in one of these actions referred to. The court found from his testimony that he had been deceived and defrauded by Maislen, Hoffson and a man named Bonasso, the latter having given Powers certain notes which were not paid and then, in order to lull Powers into the belief that he was still protected, gave him a worthless mortgage on property in Windsor to secure the notes—the defendant Hoffson or Maislen already holding a prior mortgage in a large amount.

In another of these cases the plaintiff, a widow— Mrs. Crowley—was permitted to testify, and the court found, that defendants Maislen and Kupperstein with Bonasso so induced her, in February, 1930, to transfer valuable real estate in Wethersfield to Bonasso for an unsecured note of the latter, who was falsely represented by them to be financially responsible. Bonasso then transferred the property to Kupperstein and then defendants Maislen, Hoffson and Kupperstein induced her to accept a worthless fourth mortgage on the same Martin Street property which is involved in the pres-

ent action. This mortgage was made by Hurwitz to Kupperstein and endorsed by the latter to Mrs. Crowley, and defendant Maislen at once took her to the town clerk and had the mortgage recorded, all being done to induce Mrs. Crowley to believe she was secure. Thereafter she sued Kupperstein and Bonasso on the note.

Likewise a witness—Rosina Williams—was allowed to testify for the plaintiff, and the court found, that in January, 1930, the defendant Maislen falsely assured her that Bonasso owned "plenty of property" and she was thus induced to transfer real estate in Bloomfield to the latter, accepting $50 in cash and the balance of the consideration in the unsecured notes of Bonasso. The latter then transferred the property to Kupperstein. The notes not being paid, she was told by Maislen, to whom she complained, and in order to induce her to believe she would be secure, that he would tell her of some property of Bonasso which she could attach if she would say nothing of where she got the information. She made the attachment and then was foreclosed out by the defendant Maison Company.

The court found as a fact that all these fraudulent transactions were arranged by and at the suggestion of the defendants in this action and that the various papers were passed at the office of the same notary who had acted for them in the present case.

The defendants make the twofold contention, (1) that the testimony of these witnesses was inadmissible —and the court allowed a blanket exception as to all of it; (2) that the court could not properly take judicial notice of the three files in the cases referred to.

The testimony was obviously offered to prove that these defendants, within two years, had been involved in fraudulent real-estate transactions similar in character to those complained of in the case on trial. It

was the right of the trial court in the exercise of its discretion to take judicial notice of the files referred to, and in support of the oral evidence, to ascertain the nature of the transactions involved, the parties and the issues. One of the files was examined at the request of counsel for the appellant, and immediately the other files were called to the court's attention, and no exception was taken thereto. It cannot now be claimed that the court erred in inspecting these files. *McCleave* v. *Flanagan Co.*, 115 Conn. 36, 38, 39, 160 Atl. 305, and cases cited.

As shown by the finding, this evidence established in the mind of the court the fact that these fraudulent transactions were carried out by some or all the defendants in a manner and by means similar to those in this case, and showed on their part "a mental attitude and system of the appellants to conspire together fraudulently to deprive owners of real estate of their holdings and to lull those defrauded into security by subsequently transferring to them mortgages and other security, which in every instance were worthless in value and subsequent to mortgages in which the appellants Maislen and Hoffson had an interest." That this was a reasonable conclusion from that evidence does not admit of fair question, but it remains to consider whether proof of such facts was proper in support of the plaintiff's case in the present action. The general rule may be found in the decision of an early case in this State. Where it is charged that fraud has been committed by two or more persons pursuant to a combination or conspiracy for that purpose, the fraudulent combination and fraudulent motive may be inferred from a series of successive transactions of the same character in respect to such a subject-matter; and it is not essential that such transactions should be contemporaneous or nearly so. The evidence is not intro-

duced to prove the character of the parties, but to show them conspiring to defraud by acts similar to those under inquiry in the particular case and establishing the *quo animo* and a common purpose, so as to raise an inference that the particular subject-matter was but a part of the same conspiracy. *Edwards* v. *Warner*, 35 Conn. 517, 518, 519; *Hoxie* v. *Home Ins. Co.*, 32 Conn. 21, 37; *Knotwell* v. *Blanchard*, 41 Conn. 614, 616; *Gardner* v. *Preston*, 2 Day, 205.

The appellants recognize the rule to which we have referred, but say: "Where the object of the evidence is to show a pre-existing design, plan, or scheme, something more than a mere similarity of results must be shown. There must be such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manipulations." This is in substance the statement of Wigmore, Evidence (2d Ed.) § 304. But the evidence in question conforms to this statement also. It does not alone show a similarity of results; there is shown to be a strikingly similar concurrence of plan and method in all the cases, essentially identical with that in the instant case, only to be explained by attributing to these defendants a comprehensive design by conspiring together to deprive unsuspecting and inexperienced persons of their property by fraudulent manipulations of real estate, notes and mortgages. This evidence was properly admitted.

It is further assigned as error that the judgment is not warranted by the complaint, but this contention is without merit. The complaint sufficiently alleges specific acts of these defendants conspiring together in furtherance of a common purpose, fully consummated, to cheat and defraud the plaintiff, and that these defendants all benefited and the plaintiff was damaged thereby. The allegations clearly indicate that the gist

of the action is the tort committed by these defendants resulting in the plaintiff's damage.

There is no error.

In this opinion the other judges concurred.