S. S. HAWLEY, d/b/a S. S. Bud Hawley Construction Company, Plaintiff-Appellant,

v.

Edward MERRITT, Individually and as an Officer, Agent and Member of Local Union No. 146, Sheet Metal Workers' International Association, and as Representative of a class consisting of the members of Local Union No. 146, Sheet Metal Workers' International Association, Defendants-Respondents.

No. 8850.

Springfield Court of Appeals, Missouri.

Feb. 11, 1970.

Motion for Rehearing or for Transfer to the Supreme Court Denied Feb. 26, 1970.

Application to Transfer Denied April 13, 1970.

Donald W. Jones, Church, Prewitt, Jones, Wilson & Karchmer, Springfield, for plaintiff-appellant.

Daniel J. Leary, Joplin, for defendants-respondents.

HOGAN, Judge.

This is an action for tortious interference with contract rights. The plaintiff had a verdict in the amount of $2,500. Defendants were granted a new trial on two specified grounds: (1) That plaintiff's Instruction No. 2 was erroneous in several respects, and (2) that prejudicial error was committed in admitting plaintiff's exhibits 9 and 10, and in admitting testimony (in reality, cross-examination) concerning those exhibits. The plaintiff has appealed.

The case arose out of defendants' picketing activity on two construction projects where the plaintiff was general contractor. The petition is prolix and patently involves complex rules of law. It is laid in two counts. In Count One, plaintiff alleges that the defendants " * * * conspired with other labor organizations, other individuals and members of other labor organizations, and * * * among themselves" for eight separate unlawful purposes, all of which are fully pleaded. One of the alleged objects of the pleaded conspiracy was " * * * to coerce the Ozark Empire Fair Board and the Boyd Aluminum Mfg. Co., Inc. to cease doing business with the plaintiff and to cancel their contracts with plaintiff and to replace plaintiff by [sic] contractors whose employees are members of the defendant union or of other unions affiliated with the Springfield Building Trades Council, all in violation of the common law against restraint of trade of the Missouri Anti-Trust Statute [1] and in violation of Sections 8(b) [(4)] (i) (ii) (4) (B)." [2] Count Two pleads the same picketing activity as tortious interference with contract relations.

The record events with which we are concerned occurred during the interrogation of defendant Merritt. Mr. Merritt identified himself as "business representative" for the defendant union. Among other things, Mr. Merritt denied on direct examination that he, as an individual, had anything to do with the picketing complained of, and denied the existence of any

1. Section 416.010, RSMo (1959), V.A.M.S.

2. Of the Labor Management Relations Act (Taft-Hartley Act), codified as 29 U.S.C. § 158(b) (4) (1964).

conspiracy to take action against the plaintiff on the occasion in question.

On cross-examination, plaintiff's counsel launched into a series of questions concerning the activities of the Springfield Building Trades Council. We are not sure what this council is; apparently it is an organization composed of construction unions and the Teamsters Union. Counsel opened this series of questions by asking: "Q. Despite the fact, Mr. Merritt, that you don't have that right and you admitted that in that deposition questioning, isn't it true that your union and the other unions that belong to the Springfield Building Trades Council, namely the AFL-CIO unions in the building and trades crafts, and the Teamsters Union, which is not an AFL-CIO union, isn't it true that that organization at their meeting which you customarily attend, discusses plans to prevent non-union contractors from being able to engage in business in this area? A. No. Q. You deny that? A. Yes." Defendants' counsel objected that there was no allegation in the case relating to the Springfield Building Trades Council or any union other than Mr. Merritt's union. The court asked if plaintiff was prepared to "tie in" the activity of the Springfield Building Trades Council, and counsel replied that since Mr. Merritt denied he had conspired with any other labor organization he was "laying the foundation to go into this matter a little further." Merritt was then asked what labor organizations were represented on the council; he answered he was not sure who all it was. Over objection that what the council discussed was not material to any issue, Mr. Merritt was asked: "Q. Do you deny that frequently the delegates to the Springfield Building Trades Council, of which you are one, discuss what to do about non-union contractors in the area being able to do construction work and about putting pickets on those jobs in order to get rid of those non-union contractors to shut down jobs, to hound the devil out of them and to otherwise put pressure on them to get rid of any non-union contrac-

tors? A. The adjectives used are just not so." Merritt said he did not know the policy of the council, and he was then asked if " * * * the Council ever did in the past discuss things like I talked about, hounding the devil out of somebody because he had non-union help." Merritt answered, "Not that I know of."

Defendants' attorney again objected that counsel's line of questioning was wholly irrelevant. Plaintiff's attorney was asked by the court if he could "tie that in." His reply was, "I have a series of things that will show a past custom and practice which we can use as evidence of a present conspiracy, a continuing type conspiracy."

Merritt was then asked if he remembered a meeting where a Mr. Clouse reported that "they" were on strike at a nearby plant and "that the Teamsters crossed their picket line." Merritt did not. The witness was asked if he "[denied] that such types of things are discussed"; he did not recall anything like that. Counsel then inquired if the witness "[remembered] the meeting where the secretary of the Building Trades reported that he and Jr. McCarty and Jim Clouse went with Newton Construction Company on a church job at Kimberling City, that Mr. Newton assured them that it was not and would not be the policy of their company to sub-let work to non-union sub-contractors," and the answer was "No." Being asked "if he denied" such reports were given, the witness stated "it could have been." Counsel then suggested, "In other words, the delegates to this Building Trades Council report about non-union jobs and go out and get commitments from general contractors that they won't use non-union sub-contractors, don't they," and Merritt replied, "Well, yes, that's our job." Plaintiff's attorney inquired, "And if they don't [agree] you put on a picket don't you," and the witness replied, "Not necessarily, no."

Mr. Merritt was then asked: "Q. Yes. Do you remember the meeting where Brother Ray Edwards reported on the

meeting on the Gainesville School job and stated that we would have to 'ride shotgun on him to get our work,' do you remember that? A. No. Q. Do you remember the meeting where secretary Moore reported on the Bob Withers project in Kimberling City, a bowling alley, and Floyd Gill suggested, 'that we hound the devil out of Bob Withers on his new project'? A. No, I don't remember that. Q. You don't recall that? A. No, sir. Q. Do you deny that such type conversation occurs in these Building Trades meetings? A. Mr. Jones, I never heard anybody use the expression that they were going to hound the devil out of anybody." Counsel then inquired if it were not true "that when one union puts on a picket they are supposed to notify the other trades [in the council] that the picket is put on so that all the trades will recognize that picket and not cross the picket and thereby the job would be shut down." Merritt denied that his union had ever notified anybody of its intention to put on a picket. He added that his union had never been notified that a picket would be put on; he knew of no agreement among the delegates to the council that the unions would be notified about picketing activity. He had heard no business agent who was a representative on the council make a request that his union be notified. Merritt stated that he received no copies of the minutes of the Building Trades meeting, and he did not know what they contained. "Occasionally" the Building Trades organization itself engaged in picketing activity, and all the unions were assessed for the cost of the picketing activity.

Plaintiff's attorney then switched to a series of questions concerning the defendant union. Merritt was asked if "in fact your union was instrumental" in getting the Mack Hill Heating Company, a non-union contractor, pulled off a nursing home job in Joplin. Mr. Merritt answered, "No." The witness was then asked if there was a shopping center project in Lebanon where Newport and Hessee was general

contractor and it had been indicated that the sheet metal work would go to a non-union subcontractor, and the witness had reported to the union that he was ready to take proper action. The witness stated he did not recall that incident. He was then shown some copies of minutes of the executive board meeting of the defendant union, and he stated that with respect to the project at Lebanon no action was ever taken. At this point plaintiff's exhibits 9 and 10 were introduced in evidence. The entries offered in evidence were as follows:

"Mack Hill Heating Co. non-union contractor was pulled off nursing home job at Joplin with promise from General Contractor a union contractor would be employed.

Building trades voted a double assessment for all trades to pay picket duty on non-union school job at Ash Grove. A motion was made seconded and carried to pay our regular assessment only until other trades square up."

"Shopping center at Lebanon Newport & Hessee G. C. thinks sheet metal work will go non-union. B.A. ready to start proper action."

The defendants moved to strike all the testimony beginning with reference to the Springfield Building Trades Council because plaintiff had indicated it would be tied in to some kind of conspiracy, and no such connection had been shown. Counsel for the plaintiff stated that he believed Mr. Merritt had admitted "that conspiracy." We have not quite set forth this part of the cross-examination question by question, but what we have set out is substantially that part of the record the trial court referred to in granting a new trial.

■ The general rules which govern this appeal have been fully stated so many times it is unnecessary to repeat them at length. Trial courts have broad discretionary authority to grant a new trial for

error involving questions of fact and matters affecting the determination of fact issues. Tate v. Giunta, Mo., 413 S.W.2d 200, 202 [1]; McCandless v. Manzella, Mo., 369 S.W.2d 188, 190 [2]. Granting a new trial because of error in admitting evidence or because improper and prejudicial cross-examination was allowed is an exercise of that discretionary power, DeMaire v. Thompson, 359 Mo. 457, 465, 222 S.W.2d 93, 97, and of course if the trial court grants a new trial on a discretionary ground, we review the ruling only to determine whether or not there has been an abuse of discretion. Higgins v. Gosney, Mo., 435 S.W.2d 653, 661 [14, 15]; Tate v. Giunta, supra, 413 S.W.2d at 202 [3]. Because the trial court is obviously in a better position to judge the prejudicial effect of the error, we defer to and are liberal in upholding a trial court's action in grantng a new trial, Tate v. Giunta, supra, 413 S.W.2d at 203 [7, 8], " * * * even though we may feel, on the cold record, that as a [trial] court we might have ruled otherwise * * *." DeMaire v. Thompson, supra, 359 Mo. at 465, 222 S.W.2d at 97.

Recognizing that he has the burden to establish error in this court, McCandless v. Manzella, supra, 369 S.W.2d at 190 [2], the plaintiff maintains that his cross-examination of Mr. Merritt was entirely proper. All the matters into which he inquired, he says, were proper matters for cross-examination. Further, plaintiff argues that he was able to obtain admissions from Merritt that the Springfield Building Trades Council does conspire together through "pre-job" conferences to deprive non-union contractors of construction jobs, that the council does sometimes engage in picketing activities as a group, and that Merritt himself sometimes engaged in picketing of non-union jobs for that reason. In support of this argument, plaintiff cites Contour Chair Lounge Co. v. Aljean Furniture Mfg. Co., Mo.App., 403 S.W.2d 922, which holds, 403 S.W.2d at 927 [6], that a conspiracy may be established by circumstantial evi-

dence. Granting that this is a case in which plaintiff's proof could properly take a wide range, and a case in which he was to be permitted considerable latitude on cross-examination, we cannot agree with plaintiff's position on this appeal.

■ It is one thing to say that in a proper case, other similar acts may be shown to evidence intent when conspiracy is charged; authority may be found for that proposition. See, for example, American Medical Ass'n. v. United States, 76 U.S.App.D.C. 70, 130 F.2d 233, 250–251 [15], and cases cited footnote 88; Davis v. Maislen, 116 Conn. 375, 165 A. 451, 454 [10] [11]. It is another thing to say that in this particular instance, plaintiff obtained an admission of relevant, material facts on his cross-examination of defendant Merritt. Merritt did "admit," if that is the proper word, that the labor unions which compose the Building Trades Council sometimes attempt to persuade a prime contractor to boycott non-union subcontractors, but that activity is not unlawful as long as the union refrains from the specifically prohibited means of coercion through inducement of employees, Local 20, Teamsters, Chauffeurs and Helpers Union v. Morton, 377 U.S. 252, 259, 84 S.Ct. 1253, 12 L.Ed.2d 280, 286, and no such unlawful coercion was admitted. Moreover, a boycott in advance of the subcontract could not interfere with existing contractual rights.

■ As to plaintiff's contention that Merritt admitted that the council sometimes engaged in picketing activity, and that he himself sometimes engaged in the same activity to prevent non-union subcontractors from obtaining employment, we believe he considerably overstates the effect of his cross-examination. Mr. Merritt was asked, "And if they don't [agree to use union subcontractors] you put on a picket, don't you," and he replied, "Not necessarily, no." Counsel pursued the matter, and asked, "But you do sometimes, don't you," and received the reply, "That has happened, I suppose." In our view, these

equivocal answers cannot be taken as an admission that the defendant union or defendant Merritt, on some other occasion, conspired with others to engage in unlawful picketing activity. We may further note in this connection that even *if* these cryptic answers be taken as an admission that Merritt or the defendant union sometimes attempted to obtain a boycott agreement by the use of pickets, such activity is not necessarily unlawful when undertaken by construction unions. See Construction, Production & Maintenance Laborers Union, Local 383 v. N.L.R.B., 9 Cir., 323 F.2d 422.

■■■ The cross-examination to which we have been referring covers some eleven pages in the transcript. The necessity of limiting this opinion to a reasonable length has prevented our setting it out question by question and answer by answer, but there are by our calculation at least nine questions put by plaintiff's counsel over defendants' objection which argue or assume, without any basis in the record, that the members of the Springfield Building Trades Council had in the past banded together to boycott non-union labor. Absolutely no connection was shown with the picketing activity which was the subject of this action. While we cannot say that the scope of inquiry on cross-examination was too broad, we can say that counsel's method of questioning was improper because he repeatedly phrased his cross-examining questions either in argumentative form or so as to assume facts not in evidence. We have no doubt that the net effect of the cross-examination, whether by design or not, was to suggest to the jury that the defendants were probably guilty of some unfair and actionable conduct in this case because they, along with all the other construction unions in the area, made a practice of harassing non-union subcontractors as a group. It is, of course, improper and sometimes prejudicial to phrase questions on cross-examination in argumentative form, or to frame them so as to assume as fact matters of which there is no evidence, Lonnecker v. Borris, Mo., 245 S.W.2d 53,

56 [3, 4]; State v. Carroll, Mo., 188 S.W.2d 22, 24; III Wigmore, Evidence, § 780, pp. 135–137 (3rd ed. 1940), and a new trial may be granted for persistent interrogation by improper questions when significant and improper inferences are created. Ryan v. Campbell "66" Express, Mo., 304 S.W.2d 825, 828; Moore v. Shelly Motors, Inc., Mo. App., 225 S.W.2d 953; Anno., 109 A.L.R. 1089 (1937). We do not say in this case that plaintiff's counsel was guilty of any intentional misconduct, but a number of his questions on this cross-examination were highly improper. Whether or not his improper cross-examination substantially influenced the verdict and was prejudicial was a question primarily for the trial court. Stutte v. Brodtrick, Mo., 259 S.W.2d 820, 825 [4]; DeMaire v. Thompson, supra, 359 Mo. at 465, 222 S.W.2d at 97 [5, 6].

As to exhibits 9 and 10, the trial court stated in its order for new trial, in effect, that it considered them irrelevant, and that it believed it had erred in submitting the case to the jury without an instruction withdrawing them from consideration. In this connection, the plaintiff argues that the trial court did not clearly remember what happened because it did not correctly specify whose minutes were received in evidence. It is true that the court referred to minutes of the MoKan Council and the Springfield Building Trades Council, but exhibits 9 and 10 were the only minutes of any meeting received in evidence, the trial court referred specifically to "excerpts from minutes," and we reject the suggestion that the trial court did not remember what it had admitted in evidence.

■■■ Further in this connection, the plaintiff argues that even if exhibits 9 and 10 were erroneously admitted they were not shown to the jury, and even though a withdrawal instruction might have been proper no prejudicial effect could have resulted from their admission, especially, he says, since he submitted his case on the theory of a tortious interference with contract and not on the theory of a conspiracy. The

record only reflects that the exhibits were received in evidence, and we cannot accept plaintiff's suggestion that the jury did not see them, any more than the court was prepared to accept counsel's assurance in McCandless v. Manzella, supra, 369 S.W.2d at 191 [6], that the jury probably did not hear his remark about the Mafia. Likewise, the appeal having been taken from an order granting a new trial, it is not determinative that the defendants did not request a withdrawal instruction. If the exhibits were erroneously admitted, the trial court could correct its own error by granting a new trial within the scope of the motion therefor, even though no objection had been made at the trial, Johnson v. Kansas City Public Service Co., 360 Mo. 429, 434, 228 S.W.2d 796, 797 [3, 4], or even if the withdrawal instruction had been given. Hawman v. McLean, 139 Mo.App. 429, 432, 122 S.W. 1094, 1095.

Of the three minute entries introduced in evidence, we consider that the first may have had some relevancy; it states that Mack Hill Heating Co. non-union contractor was pulled off nursing home job at Joplin with promise from General Contractor a union contractor would be employed." Merritt had denied that his union was "instrumental" in getting that company "pulled off" a nursing home job in Joplin. The minute entry introduced does not show the defendant union was "instrumental" in having the Mack Hill Heating Co. "pulled off" the job, but it contradicts Merritt to some extent and was doubtless admissible for purposes of impeachment.

As to the other two excerpts from defendants' minutes, we agree that they were erroneously received. Merritt did not deny that his union engaged in picketing activity, nor that his union wanted work to go to union subcontractors; these entries have no tendency to impeach his testimony. The last two entries are fragmentary; at best, they are evidence of something which happened at another time

and place. They were offered as evidence of a conspiracy. Proof of the commission of an act by proof of the commission of other similar acts is not forbidden, but to be admissible, evidence of collateral acts must have relevancy and cogency as proof of the main issue sufficient to outweigh the possible confusion of issues and prejudice to the rights of the adverse party which may result from its introduction. Jones v. Terminal R. R. Ass'n. of St. Louis, Mo., 242 S.W.2d 473, 477 [6] [7]; 29 Am.Jur.2d Evidence, § 298, pp. 342–344. See also, Conley v. Kaney, Mo., 250 S.W.2d 350, 353. Counsel have not cited us to a case which is actually in point, but such sparse authority as we have found indicates that evidence of collateral acts is relevant and admissible in conspiracy cases and in cases involving tortious interference with contract to show unlawful intent or purpose. Davis v. Maislen, supra, 165 A. at 454 [10] [11] (conspiracy to defraud); Calbom v. Knudtzon, 65 Wash.2d 157, 396 P.2d 148, 154 [11] [12] (tortious interference with contract); II Wigmore, Evidence, §§ 370, 371, pp. 299–300 (3rd ed. 1940). All the second two excerpts from defendants' minutes show, however, is that on prior occasions the defendant union had engaged in picketing activity, inferably construction site picketing. The second of the last two excerpts recites only that the "B.A." was ready to take "proper" action if construction work was let to a non-union subcontractor. The jury could not logically infer the commission of an unlawful act from the prior commission of a perfectly lawful act, and as we have noted, construction site picketing may be lawful even though it constitutes a secondary boycott. Construction, Production & Maintenance Laborers Union, Local 383 v. N.L.R.B., supra, 323 F.2d 422; 48 Am.Jur.2d Labor and Labor Relations, §§ 845, 882, pp. 536–537, 557–558. Without amplification, the last two excerpts or parts of exhibits 9 and 10 are irrelevant and serve only to reinforce counsel's suggestion of improper activity which began with his cross-examination concern-

ing the Springfield Building Trades Council. When a trial court has admitted irrelevant evidence upon the assurance of counsel that its relevancy will be made to appear, and the proper connecting evidence is not brought forward, the trial court may and should rectify its error by granting a new trial if it believes that the irrelevant evidence was prejudicial and substantially affected the verdict. Root v. Kansas City Southern Ry. Co., 195 Mo. 348, 375–376, 92 S.W. 621, 630 [6], 6 L.R.A.,N.S., 212; Smith v. City of Sedalia, 182 Mo. 1, 9–10, 81 S.W. 165, 167; Bruhin v. Great Eastern Casualty Co., Mo.App., 202 S.W. 422, 424; 66 C.J.S. New Trial § 40, p. 136.

Whether or not the cross-examination of defendant Merritt and the admission of exhibits 9 and 10 were prejudicial and substantially affected the verdict was primarily for the trial court to determine. Ryan v. Campbell "66" Express, supra, 304 S.W.2d at 827; Stutte v. Brodtrick, supra, 259 S.W.2d at 824–825; DeMaire v. Thompson, supra, 359 Mo. at 465, 222 S.W.2d at 97. We cannot confidently say the trial court abused its discretion. We need not, in view of this ruling, consider the other ground assigned. The order granting a new trial is affirmed.

TITUS, P. J., and STONE, J., concur.