STATE OF CONNECTICUT *v.* RICKY ELLIS
(AC 10760)

PETERS, C. J., CALLAHAN, BORDEN, BERDON, NORCOTT and KATZ, Js.

*(Two justices dissenting)*

Decision released February 23, 1993

*Elizabeth M. Inkster,* assistant public defender, in support of the motion.

*Judith Rossi,* assistant state's attorney, in opposition to the motion.

PER CURIAM. The defendant moves that this court review and vacate an order of the Appellate Court granting the state's motion to strike the first issue in his Appellate Court brief and the appendix accompanying that issue. Two members of this court have voted to transfer the case to our docket and to restore the stricken material. Because we lack subject matter jurisdiction over this matter, we dismiss the defendant's motion. We also decline to transfer the appeal to our docket.

The following facts, taken from the trial court file, the defendant's motion papers in this court and the state's response thereto, are undisputed. The defendant was charged in the Hartford judicial district with robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), and larceny in the first degree in violation of General Statutes §§ 53a-122 and 53a-119, and elected a jury trial. During jury voir dire on May 14, 1991, the defendant, an African-American, moved to dismiss that panel of venirepersons on the ground that the absence from the panel of minority residents of Hartford was evidence that the panel had not been randomly selected. The trial court, *Purtill, J.,* after noting that there was one African-American on the panel, held a hearing on the defendant's motion.

After the jury clerk had testified to the random process for selecting the members of the panel, the defendant's counsel conceded that the clerk's testimony provided no basis for a claim of juror manipulation or lack of random selection, but declined to withdraw the challenge. Relying solely on the list of jurors who had been summoned on May 7, 1991, and not immediately excused, the defendant maintained that a random selection process had not been followed and that all possible urban jurors had been excluded. The trial court found that the panel of venirepersons had been randomly selected and that there had not been an intentional exclusion of Hartford residents. Accordingly, the trial court denied the defendant's motion.

Voir dire of this panel continued through May 15, 1991, and continued thereafter with a second panel of venirepersons summoned on May 17, 1991. The court reporter was excused throughout most of the voir dire. Ultimately a jury was selected and found the defendant guilty of the two crimes charged.

On May 31, 1991, the defendant moved in writing for a new trial and for a judgment of acquittal, raising nine specific claims. The third claim was: "The jury array from which the petit jury was chosen was selected in a non-neutral way, did not represent a fair cross section of the community and resulted in a denial of equal protection of the law." That motion was not accompanied by an offer of evidence or by a memorandum elaborating in any way on this claim. The defendant's motion was heard by the court on August 23, 1991.

The defendant's entire argument and submission to the trial court concerning his claim of improper jury array selection consisted of the following statement by his trial counsel: "Essentially, Your Honor, there is a motion dated May 31, 1991, for a new trial and for acquittal and these are all issues in that motion that were raised during the course of the trial. I'm not going to go through all of them and repeat all my arguments, but Your Honor will recall there had been some discrepancy in the jury selection process and it turned out that—later turned out that some of the jurors had been—certain minority jurors had been steered toward the [*State* v. *Webb,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CR 89 371150 (September 12, 1991)] case and I had raised an issue about whether or not there was a fair and impartial jury in this particular—fair and impartial array in this particular matter as a result. We did have a hearing. The hearing disclosed that there was nothing unusual about it, just seemed that all the jurors were from certain suburbs and none from the urban areas and that's what [piqued] my interest in the first place, with regard to that. Be that as it may, this has already previously been argued. The record is clear. I'll note, at this point, for the record, that most of the discussion concerning the jury array arose during jury voir dire, so that in the event of an appeal, someone, if it's

not me, and it's unlikely it's going to be me, I'm a special public defender in this case, has to order transcripts, they should also order those portions of the colloquy that took place during jury voir dire and perhaps the entire voir dire process needs to be ordered as well."

The court's ruling on this claim was as follows: "With respect to the jury selection . . . if you are not going to be appellate counsel in this matter and an appeal is taken, then I think you should apprise whoever takes it over that that issue was raised. The issue was raised, I think it was resolved. I don't think that there was any serious—any difficulty with it and I don't think that—I think the rulings made were correct." The court thereafter denied the motion and imposed sentence. The defendant appealed to the Appellate Court.

In his Appellate Court brief, the defendant, now represented by the office of the chief public defender, has made four claims, the first of which is: "The court's denial of the motion for a new trial based on a challenge to the manner in which the jury panels were selected violated federal and/or state constitutional guarantees to due process and to an impartial jury."[1] In support of this claim, the defendant argued in his brief that his trial counsel had specifically and distinctly argued, on his motion for a new trial,[2] that the jury clerk had steered minority jurors away from his panels in order to make more minority venirepersons available for the trial of a different criminal defendant, namely, Daniel Webb, who was also being tried in the

---

[1] The defendant also claimed that the trial court improperly: (1) permitted testimony related to police broadcast and 911 emergency telephone tapes that had been destroyed; (2) instructed the jury on an essential element of larceny and robbery; and (3) instructed the jury on reasonable doubt.

[2] As an alternative to his claim that this issue had been distinctly raised in the trial court, the defendant sought to prevail under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989), and the plain error rule.

Hartford judicial district during the same time period. The defendant contended that the pool of eligible jurors available on May 15, 1991, for all cases then pending in the judicial district had been purposefully manipulated in order to boost minority representation on the jury panels in the *Webb* case. He claimed that, on May 15, 1991, after Webb had complained about the low minority representation on his jury panel, "five jurors (three whites and two blacks) were hand-picked and added to the [*Webb*] panel."

This improper practice, the defendant argued, reduced the number of minority jurors available for his second panel on May 17, 1991, in violation of his constitutional right to a jury selected from a fair cross section of the community. The gist of the defendant's claim on appeal, therefore, was that his May 17 panel, but not his May 14 panel, had been tainted by the juror manipulation that had allegedly occurred in the *Webb* case on May 15.

Recognizing that none of these asserted facts were in the record of this case, the defendant printed in the appendix to his brief transcripts of certain trial court proceedings that had taken place in the cases of *State* v. *Webb*, supra, and *State* v. *Hooks*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CR 90 394660 (August 9, 1991), which had been tried in the Hartford judicial district during the same period as the defendant's trial. The defendant stated that the facts supporting his claim of improper reduction of the number of minority jurors available for his May 17 panel were set forth in these transcripts, and he urged the Appellate Court to take judicial notice of those transcripts for the purpose of acknowledging those facts as true.

The *Webb* transcript indicates that on May 15, 1991, the defendant in that case, apparently acting pro se

but with standby counsel, had complained to the trial court, *Corrigan, J.,* that there was an insufficient number of African-American venirepersons on his venire panel. A colloquy took place between Judge Corrigan and the defendant wherein the court stated: "The next thing [the standby counsel] had indicated was that perhaps, as has been done in trial courts, where there's an imbalance of any one race or ethnic group, that additional jurors be added to the panel. I made no count last night, but apparently your counsel did and they indicated to the court that there were only two blacks on the panel of thirty-six, at which point I called upstairs to find out if there were any additional people who were brought in yesterday and was informed that I had them all except for four people who [had] other things to do this week, so that I was getting all the panel that was coming in yesterday.

"Then I asked the jury clerk if there were any other black jurors up there who came in previously that could be added to the panel and she said there was no way of denoting that and that she didn't want to walk up to any particular black juror and ask them to sit on a particular panel. So, her only avenue was then to make a selection of an additional number of people, hoping that there would be some black jurors in that additional number." The remainder of the colloquy indicates that this process resulted in an additional five venirepersons summoned to the *Webb* voir dire, of which two were African-American.

The *Hooks* transcript indicates that on June 4, 1991, apparently after a jury had been selected in that case and while the trial court, *Miano, J.,* was in the process of hearing a pretrial motion, Judge Miano sua sponte raised a matter relevant to a challenge to the jury array that the defendant in that case had filed. A colloquy among Judge Miano, defense counsel and the state's attorney ensued in which Judge Miano reported that

he had spoken to Judge Purtill. According to Judge Miano, Judge Purtill had told him that he had, the previous week, held an evidentiary hearing in a fourth case.[3] Judge Miano reported that his recollection of Judge Purtill's comments to him was that Judge Purtill had found, from the testimony of one of the jury clerks, that on May 15 the jury clerk had selected, in a nonrandom fashion, five additional venirepersons, three white and two African-American, and sent them down to Judge Corrigan in the *Webb* case. This was corroborated by the state's attorney in the *Hooks* case, upon the basis of *his* conversation with the state's attorney who had handled the evidentiary hearing before Judge Purtill. Because the jury in the *Hooks* case had been selected from a panel on May 23, the state's attorney conceded that the *Hooks* panel had been tainted. The court, *Miano, J.*, dismissed the *Hooks* jury.

In moving to strike this entire issue and the accompanying portion of the appendix from the defendant's brief, the state presented several arguments. First, the state argued that, although the issue that had been raised in the trial court in this case concerned the validity of the defendant's May 14 panel, the issue raised on appeal concerned, not the validity of that panel, which had been brought into the courtroom the day before the *Webb* case occurrence, but the validity of the defendant's May 17 panel. That issue, the state pointed out, had not been raised by the defendant in this case, except tangentially in his August 23 argument on his motion for a new trial, and, furthermore, the tangential reference had been misleading because it incorrectly implied that the alleged *Webb* panel manipulation had been raised earlier in the context of this case.

Second, the state argued that the defendant had defaulted on his claim of jury panel manipulation. The

---

[3] We refer to that case as the fourth case, considering this case, the *Webb* case and the *Hooks* case as the first three cases.

state contended that, if the defendant's counsel had known of the purported jury taint during the jury voir dire or the trial, he should have brought it to the attention of the court at that time and, having failed to do so, the defendant was barred from raising it on appeal.

Third, the state argued that the record was inadequate to raise the issue of the validity of the May 17 panel because it consisted of only (1) the defendant's counsel's representations regarding the alleged *Webb* panel manipulation, and (2) the *Webb* and *Hooks* transcripts. The representations by counsel, the state contended, were insufficient under our case law as a record of jury array invalidity. The state also argued that the transcripts could not be judicially noticed for the purpose of establishing the alleged manipulation of the *Webb* panel. Moreover, the state argued, the two transcripts were conflicting on that issue.

Finally, the state argued that, if the Appellate Court were to draw the factual inferences sought by the defendant from those transcripts, namely, that the *Webb* jury clerk had tainted the pool of jurors on May 15, the state would be prejudiced because it would have had no opportunity to offer evidence to counter the defendant's claims of improper manipulation of his May 17 panel.

On the basis of this record, the Appellate Court granted the state's motion to strike. This motion for review followed.

The defendant's motion for review raises a jurisdictional issue. The vote by the two dissenters in this court to transfer the entire case to this court at this time, and to restore the stricken material, however, raises other, more discretionary concerns.

With respect to the defendant's motion for review by this court of the Appellate Court's action in strik-

ing the issue from his brief, the defendant relies on
Practice Book §§ 4053, 4183 and 4187.[4] That reliance

[4] Practice Book § 4053 provides in relevant part: "[MOTION FOR
REVIEW]—IN GENERAL

"The court may, on written motion for review stating the grounds for
the relief sought, modify or vacate any order made by the trial court under
Sec. 4040 (a) or any action by the appellate clerk under Sec. 4040 (c) (2)
or any order relating to the perfecting of the record for the appeal or the
procedure of prosecuting or defending against the appeal, or any order made
by the trial court concerning a stay of execution on appeal. . . ."

Practice Book § 4183 provides: "SUPERVISION OF PROCEDURE

"The supervision and control of the proceedings on appeal shall be in the
court having appellate jurisdiction from the time the appeal is filed, or
earlier, if appropriate, and, except as otherwise provided in these rules,
any motion the purpose of which is to complete, correct or otherwise per-
fect the trial court record for presentation on appeal shall be made to the
court in which the appeal is pending. The court may, on its own motion,
modify or vacate any order made by the trial court, or a judge thereof, in
relation to the prosecution of the appeal. It may also, for example, on its
own motion or upon motion of any party, (1) order a judge to take any action
necessary to complete the trial court record for the proper presentation
of the appeal; (2) when it appears that by reason of omission from the pre-
pared record of matters of record in the trial court the questions of law
in the case are not properly presented, order the appellant to cause to be
photocopied the portions so omitted; (3) order improper matter stricken
from the record or from a brief; (4) order a stay of any proceedings ancil-
lary to a case on appeal; (5) order the addition to the prepared record of
parts of the file necessary to present correctly or fully the matters com-
prehended by Secs. 4065 (a) and 4066 (a); (6) order that a party for good
cause shown may file a late appeal; (7) order that a hearing be held to deter-
mine whether it has jurisdiction over a pending matter; (8) order that a
hearing be held to determine whether sanctions should be imposed pur-
suant to Sec. 4184; (9) order an appeal to be dismissed unless the appellant
complies with specific orders of the trial court, submits to the process of
the trial court, or is purged of contempt of the trial court; (10) remand any
pending matter to the trial court for the resolution of factual issues where
necessary; (11) correct technical or other minor mistakes in a published
opinion which do not affect the rescript."

Practice Book § 4187 provides: "RULES TO BE LIBERALLY INTERPRETED

"The design of these rules being to facilitate business and advance jus-
tice, they will be interpreted liberally in any case where it shall be mani-
fest that a strict adherence to them will work surprise or injustice.

"In the interest of expediting decision, or for other good cause shown,
the court in which the appeal is pending may suspend the requirements
or provisions of any of these rules in a particular case on application of

is misplaced. General Statutes § 51-197f[5] limits our jurisdiction over review of decisions of the Appellate Court to final judgments of that court. *State* v. *Ayala,* 222 Conn. 331, 338, 610 A.2d 1162 (1992). We have consistently adhered to that statutory mandate. Id. We have, moreover, consistently refused to interpret Practice Book rules "as having been intended to enlarge our statutory jurisdiction." Id. Indeed, because our jurisdiction is ordinarily based upon statute, it is doubtful that a Practice Book rule could enlarge that jurisdiction without an appropriate statutory basis. See General Statutes § 51-14 (a).[6]

It is clear that the action of the Appellate Court in striking one of the defendant's four issues on appeal is not a final judgment of that court from which review would lie in this court. *State* v. *Ayala,* supra, 338–41. The motion must, therefore, be dismissed.

a party or on its own motion and may order proceedings in accordance with its direction."

[5] General Statutes § 51-197f provides: "FURTHER REVIEW BY CERTIFICATION ONLY.

"Upon final determination of any appeal by the appellate court, there shall be no right to further review except the supreme court shall have the power to certify cases for its review upon petition by an aggrieved party or by the appellate panel which heard the matter and upon the vote of two justices of the supreme court so to certify and under such other rules as the justices of the supreme court shall establish. The procedure on appeal from the appellate court to the supreme court shall, except as otherwise provided, be in accordance with the procedure provided by rule or law for the appeal of judgments rendered by the superior court, unless modified by rule of the justices of the supreme court."

[6] General Statutes § 51-14 provides in relevant part: "RULES OF COURT. DISAPPROVAL OF BY GENERAL ASSEMBLY. HEARINGS. (a) The judges of the supreme court, the judges of the appellate court, and the judges of the superior court shall adopt and promulgate and may from time to time modify or repeal rules and forms regulating pleading, practice and procedure in judicial proceedings in courts in which they have the constitutional authority to make rules, for the purpose of simplifying proceedings in the courts and of promoting the speedy and efficient determination of litigation upon its merits. . . . *Such rules shall not abridge, enlarge or modify any substantive right nor the jurisdiction of any of the courts.* . . ." (Emphasis added.)

The vote by the two dissenting members of this court, however, to transfer the case to our docket at this time and to restore the issue and appendix stricken by the Appellate Court, raises different concerns and calls for a different response. There is no question that we have the discretion under General Statutes § 51-199 (c)[7] to transfer this case, a discretion that we have declined to exercise at this time.[8]

Our decision not to transfer the appeal does not mean that we would, on a proper record, countenance an unconstitutional, nonrandom selection of venirepersons. It does mean, however, that, given the current state of this record, we prefer to await the ultimate outcome of the Appellate Court appeal before considering whether to review the defendant's claim. Awaiting the certification process in this case has two advantages. First, if the defendant prevails on his appeal in the Appellate Court and is awarded a new trial on the basis of his other appellate claims, this issue will be moot. Second, if the defendant is unsuccessful on his appeal in the Appellate Court, the certification process will, if we deem it appropriate, enable us to limit our consideration to this or any other appropriate issue, without the necessity of also considering issues that do not warrant review by this court.

[7] General Statutes § 51-199 provides in relevant part: "JURISDICTION. . . .

"(c) The supreme court may transfer to itself a cause in the appellate court. Except for any matter brought pursuant to its original jurisdiction under section 2 of article sixteen of the amendments to the constitution, the supreme court may transfer a cause or class of causes from itself, including any cause or class of causes pending on July 1, 1983, to the appellate court. The court to which a cause is transferred has jurisdiction."

[8] Upon final determination of the defendant's appeal by the Appellate Court, however, if that determination is adverse to him, the defendant will certainly have the opportunity to raise, as a ground for certification to appeal, the Appellate Court's action in striking this issue and the accompanying appendix.

The dissenting opinion concludes, however, that "the arbitrary order [of the Appellate Court] to strike the principal issue in the defendant's appeal deprives him of" his constitutional right to appeal. The unstated premise of this conclusion is that this record is so clear that we should exercise our discretion to intervene now by transferring the case and restoring the stricken issue and appendix, rather than awaiting the outcome of the Appellate Court appeal. We do not view this record as having that degree of clarity.

The dissent appears to rely on four arguments for our immediate exercise of discretionary review. The first is that the defendant's claim of manipulation of his May 17 panel "was squarely raised before the trial court." We disagree.

It is arguable, perhaps, that the defendant's counsel's tangential reference to *Webb* in his argument on August 23, 1991, alerted Judge Purtill to such a claim.[9] It is difficult, however, to characterize this record, taken in its entirety, as squarely raising the claim of taint of the defendant's May 17 panel, the claim that he raises on appeal, as opposed to a claim that his May 14 panel was invalid. Insofar as the record supplied to us thus far indicates, the only claim squarely raised in the trial court concerned his May 14 panel,

---

[9] Even that tangential reference, however, must be understood in the context of the other misleading references, before and after it, to the defendant's challenge to his May 14 panel. The defendant opened his argument by noting that "these are all issues . . . that were raised during the course of the trial." The only issue he had raised, however, concerned the May 14 panel. Then, after referring to *Webb*, he stated: "We did have a hearing. The hearing disclosed that there was nothing unusual about it, [it] just seemed that all the jurors were from certain suburbs and none from the urban areas and that's what [piqued] my interest in the first place, with regard to that. Be that as it may, *this has already previously been argued. The record is clear.*" (Emphasis added.) Again, the only issue that had been argued and upon which the record was clear was the challenge to the May 14 panel.

which could not have been tainted by whatever occurred in *Webb* on May 15.[10]

The second argument of the dissent is that there is no basis for the state's claim that the *Webb* and *Hooks* transcripts (1) were never before the trial court, (2) are unrelated factually to this case, and (3) were never made part of this record. There is such a basis. It is undisputed that those transcripts were not before the trial court when it denied the defendant's motion for a new trial and that they were not made a part of the record of this case in the trial court. Whether the transcripts are related factually to this case depends, however, on the resolution of the factual conflict disclosed by the *Webb* and *Hooks* transcripts: according to Judge Corrigan's report of his conversation with the jury clerk, there was no nonrandom selection of venirepersons in *Webb;* according to Judge Miano's recollection of his conversation with Judge Purtill regarding the fourth case, in which Judge Purtill had held a hearing, there was such a nonrandom selection. Neither Judge Corrigan nor Judge Miano, however, held an evidentiary hearing, and we do not have a record of the hearing held by Judge Purtill in the fourth case.

This leads to the third reason advanced by the dissent, namely, that the Appellate Court and, presumably, this court should take judicial notice of those transcripts. We have no quarrel with the general legal propositions stated by the dissent regarding our authority to take judicial notice of files of Superior Court cases. The more troublesome question, however, which the dissent does not address, is whether it is appropriate for us to reach factual conclusions from those tran-

---

[10] We do not intend to imply by our discussion of the dissent's arguments that the defendant could not ultimately prevail, upon a grant of certification, on his claim that the material was improperly stricken from his brief. Nor do we suggest that the defendant could not prevail under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), or the plain error doctrine.

scripts about (1) what is apparently a factual conflict regarding the conduct of the jury clerk in *Webb,* and (2) what Judge Purtill actually found in the evidentiary hearing held in the fourth case, based solely upon Judge Miano's report of his conversation with Judge Purtill. The resolution of that legal question is far from clear, and counsels for judicial patience in addressing the issue of jury panel manipulation in this case.

The dissent's fourth reason draws on what it infers as Judge Purtill's grave concern in this case for this issue of jury selection.[11] There are two responses to this reason. First, it is clear that Judge Purtill was addressing, not any issue regarding the defendant's May 17 panel, which had never been raised prior to the defendant's counsel's tangential reference thereto on August 23, but solely the issue regarding the defendant's May 14 panel, which had been litigated and rejected by the court on that date. Second, we perceive no such concern on the part of Judge Purtill. Judge Purtill stated: "The issue was raised, I think it was resolved. I don't think that there was any serious—any difficulty with it and I don't think that—I think the rulings made were correct."

The motion is dismissed.

BERDON, J., with whom KATZ, J., joins, dissenting. The majority refuses to review the summary order of the Appellate Court striking the principal issue in the defendant's appeal, together with related brief and appendix pages. The issue that was stricken is: "Did the court's denial of the motion for a new trial based

---

[11] The dissent states: "Indeed, [Judge Purtill], although he denied the defendant's motion for a new trial, was so concerned about this issue that he stated the following for the record: 'With respect to the jury selection, [defense counsel], if you are not going to be appellate counsel in this matter and an appeal is taken, then I think you should apprise whoever takes it over that that issue was raised.' "

on a challenge to the manner in which the jury panels were selected violate federal and/or state constitutional guarantees to due process and to an impartial jury?" The defendant, an African-American, claims that fewer minority members of the jury pool were available for jury selection at his trial because improper jury selection procedures were used. The defendant must, as a matter of justice and as a constitutional right, be allowed to pursue this important and sensitive issue.

It is conceded that this court has held that we do not have jurisdiction to grant similar motions to review, despite Practice Book § 4183,[1] which places the "supervision and control of the proceedings on appeal in the court having appellate jurisdiction. . . ." and Practice Book § 4187,[2] which requires liberal interpretation of our rules. In this case, in which the core of the defendant's appeal has been stricken, we should alternatively transfer the defendant's appeal to this court pursuant to the provisions of Practice Book § 4023[3] and General Statutes § 51-199 (c)[4] and upon transfer, reinstate the stricken issue, and the brief and appendix pages. The record should note that Justice Katz and I moved to transfer the appeal, without success.

The defendant claims, in the issue that was stricken from his appeal, that at the time of jury selection in his case, minority jurors were purposely removed from the jury pool and sent for voir dire in order to accommodate two other criminal cases—*State* v. *Webb,* Supe-

---

[1] Practice Book § 4183 provides in part: "The supervision and control of the proceedings on appeal shall be in the court having appellate jurisdiction from the time the appeal is filed . . . ."

[2] Practice Book § 4187 provides in part: "The design of these rules being to facilitate business and advance justice, they will be interpreted liberally in any case where it shall be manifest that a strict adherence to them will work surprise or injustice. . . ."

[3] Practice Book § 4023 provides in part: "The supreme court may transfer to itself a cause in the appellate court. . . ."

[4] See footnote 7 of the majority opinion.

rior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CR 89 371150 (September 12, 1991), and *State* v. *Hooks,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CR 90 394660 (August 9, 1991)—thereby depleting the number of minority jurors available for his trial under the "luck of the draw" from the same pool. The issue was squarely raised before the trial court. We have long held that "any attempt to stack a jury panel by intentionally including or excluding any members of a discernable class runs afoul of both due process and the right to a jury trial." *State* v. *Nims,* 180 Conn. 589, 595–96, 430 A.2d 1306 (1980). "The end result . . . is irrelevant. It is the *method* of selection which offends the constitution. . . . No harm or prejudice need be shown in an individual case." (Citations omitted; emphasis in original.) Id., 597.

Although the Appellate Court did not give us the benefit of its reasoning by writing an opinion explaining why it struck the principal issue raised by the defendant, I presume that it agreed with the state's written motion to strike, upon which it acted. The state in its motion argued that excerpts from the *Webb* and *Hooks* transcripts, which were contained in the defendant's brief and appendix, should be stricken "because they were never before the trial court in the present case, they are factually unrelated, and they were never made part of the record."

Evidence to prove the illegal diversion of minority venirepersons from the jury array must necessarily come from the cases to which these venirepersons were directed. Furthermore, the Appellate Court, like the trial court, "may take judicial notice of files of the Superior Court in the same or other cases." *McCarthy* v. *Commissioner of Correction,* 217 Conn. 568, 580 n.15, 587 A.2d 116 (1991) (this court took judicial notice of trial court records from other unrelated, yet similar

habeas cases on appeal to the Supreme Court, in order to determine the method by which the commissioner of correction aggregated sentences); *Davis* v. *Maislen,* 116 Conn. 375, 384, 165 A. 451 (1933) (trial court took judicial notice of the records of several cases regarding transactions that the defendant had engaged in, but that were unrelated to the plaintiff, in order to establish a fraudulent scheme); see also *State* v. *McDermott,* 190 Conn. 20, 23, 458 A.2d 689 (1983) (judicial notice taken of defendant's previous conviction).

Even more troubling in this matter is the breadth of the Appellate Court's order. Not only did it strike the references to the transcripts in *Webb* and *Hooks,* but it went further and struck the issue itself. "Although there is no constitutional right of appeal [under the federal constitution] . . . the right to appeal, once granted, invokes so significant a protection of liberty that it must be made available to all persons convicted of crimes. . . ." (Citations omitted.) *Gaines* v. *Manson,* 194 Conn. 510, 515, 481 A.2d 1084 (1984). In this case, the arbitrary order to strike the principal issue in the defendant's appeal deprives him of those rights. The majority endeavors to justify its position by attempting to undermine the merits of the claim. The merits of the defendant's claim are not before us at this time. The issue is whether the defendant is deprived of his right to be heard on appeal with regard to the claim that the procedures used by the court during the selection of his jury were unconstitutional.

This issue raised by the defendant, and summarily stricken by the Appellate Court, goes to the heart of our criminal justice system. *State* v. *Tillman,* 220 Conn. 487, 510, 600 A.2d 738 (1991) (*Berdon, J.,* dissenting), cert. denied, U.S. , 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992). Indeed, the trial judge, although he denied the defendant's motion for a new trial, was so concerned about this issue that he stated the follow-

ing for the record: "With respect to the jury selection, [defense counsel], if you are not going to be appellate counsel in this matter and an appeal is taken, then I think you should apprise whoever takes it over that that issue was raised."

Finally, the majority claims that if the defendant is unsuccessful before the Appellate Court on his other claims, the propriety of striking the issue could be reviewed by this court through the certification process. This claim fails to acknowledge that an appeal to the Appellate Court or an appeal on transfer to this court is a matter of constitutional right for the defendant. That simply means that as a matter of right an appellate court should review the issue. On the other hand, appeals to this court through the certification process are not a matter of right but are only allowed if this court certifies an issue for review. General Statutes § 51-197f;[5] Practice Book § 4127 ("[c]ertification by the supreme court on petition by a party . . . is not a matter of right but of sound judicial discretion and will be allowed only where there are special and important reasons therefor. . . ."). Accordingly, the possibility of this court certifying the issue for review is not a valid substitute for the defendant's right to appeal the issue.

In sum, I would transfer the appeal to this court and upon transfer reinstate the issue, and the brief and appendix pages that were stricken.

Accordingly, I dissent.

[5] General Statutes § 51-197f provides: "Upon final determination of any appeal by the appellate court, there shall be no right to further review except the supreme court shall have the power to certify cases for its review upon petition by an aggrieved party or by the appellate panel which heard the matter and upon the vote of two justices of the supreme court so to certify and under such other rules as the justices of the supreme court shall establish. The procedure on appeal from the appellate court to the supreme court shall, except as otherwise provided, be in accordance with the procedure provided by rule or law for the appeal of judgments rendered by the superior court, unless modified by rule of the justices of the supreme court."