STATE OF CONNECTICUT *v.* ENRIQUE AYALA
(14379)

PETERS, C. J., CALLAHAN, COVELLO, BORDEN and BERDON, Js.

332

■■■■■■■■■■■■

■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■

Argued February 11—decision released June 9, 1992

*Michael A. Georgetti,* for the appellant (defendant).

*Judith Rossi,* assistant state's attorney, with whom were *Kevin Murphy,* deputy assistant state's attorney, and, on the brief, *John M. Bailey,* state's attorney, and *John O'Reilly,* assistant state's attorney, for the appellee (state).

*Paul F. Thomas* and *Shelley R. Sadin* filed a brief for the Connecticut Civil Liberties Union Foundation as amicus curiae.

PETERS, C. J. The principal issue in this appeal is whether, in the circumstances of this case, the revocation of the defendant's pretrial release from confinement pursuant to General Statutes § 54-64f[1] violated

---

[1] "[General Statutes] Sec. 54-64f. VIOLATION OF CONDITIONS OF RELEASE. IMPOSITION OF DIFFERENT OR ADDITIONAL CONDITIONS. REVOCATION OF RELEASE. (a) Upon application by the prosecuting authority alleging that a defendant has violated the conditions of his release, the court may, if probable cause is found, order that the defendant appear in court for an evidentiary hearing upon such allegations. An order to appear shall be served upon the defendant by any law enforcement officer delivering a copy to the defendant personally, or by leaving it at his usual place of abode with a person of suitable age and discretion then residing therein, or mailing it by registered or certified mail to the last-known address of the defendant.

"(b) If the court, after an evidentiary hearing, finds by clear and convincing evidence that the defendant has violated reasonable conditions imposed on his release it may impose different or additional conditions upon his release. If the defendant is on release with respect to an offense for which a term of imprisonment of ten or more years may be imposed and the court, after an evidentiary hearing, finds by clear and convincing evidence that the defendant has violated reasonable conditions of his release and that the safety of any other person is endangered while the defendant is on release, it may revoke his release.

the right of bail provision of article first, § 8 of the Connecticut constitution.[2] The defendant, Enrique Ayala, while released on a $25,000 surety bond following his arrest on May 28, 1991, was arrested on June 12, 1991, and again on June 14, 1991. Upon a motion by the state to revoke the defendant's release, the trial court, *Barry, J.,* after an evidentiary hearing, revoked the defendant's release on the basis that the state had established, by clear and convincing evidence, that another person would be endangered while the defendant was on release, and that there was probable cause to believe that the defendant had committed a federal, state or local crime while on release in violation of General Statutes § 54-64e.[3] In response to the defendant's petition for review, pursuant to General Statutes § 54-63g,[4] the Appellate Court granted review but denied the relief requested. This court thereafter

"(c) If the defendant is on release with respect to an offense for which a term of imprisonment of ten or more years may be imposed and the court, after an evidentiary hearing, finds by clear and convincing evidence that the safety of any other person is endangered while the defendant is on release and that there is probable cause to believe that the defendant has committed a federal, state or local crime while on release, there shall be a rebuttable presumption that his release should be revoked.

"(d) The revocation of a defendant's release pursuant to this section shall cause any bond posted in the criminal proceeding to be automatically terminated and the surety to be released."

[2] The constitution of Connecticut, article first, § 8, provides in relevant part: "In all criminal prosecutions, the accused shall have a right . . . to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great . . . ."

[3] General Statutes § 54-64e provides in pertinent part: "(a) When any person is released pursuant to the provisions of sections 54-63a to 54-63g, inclusive, or sections 54-64a to 54-64c, inclusive, it shall be a condition of such release that the person released not commit a federal, state or local crime during the period of release."

[4] "[General Statutes] Sec. 54-63g. APPEAL FROM COURT ORDER RE RELEASE. Any accused person or the state, aggrieved by an order of the superior court concerning release, may petition the appellate court for review of such order. Any such petition shall have precedence over any other matter before said appellate court and any hearing shall be heard expeditiously with reasonable notice."

granted the defendant's petition for certification to appeal. *State* v. *Ayala,* 220 Conn. 922, 598 A.2d 365 (1991).[5] We conclude that the order of the trial court should be affirmed.

The record discloses the following undisputed facts. Subsequent to the defendant's arraignment on June 5, 1991, on charges that included burglary in the first degree in violation of General Statutes § 53a-101, unlawful restraint in the first degree in violation of General Statutes § 53a-95, risk of injury to a child in violation of General Statutes § 53-21 and assault in the third degree in violation of General Statutes § 53a-61,[6] the defendant was released after posting a $25,000 surety bond. His release was conditioned on orders that expressly required him, inter alia, to stay away from the named victim and not to commit any federal, state or local crime during the period of release. See General Statutes § 54-64e. On June 12, 1991, while on release, the defendant was arrested and charged with assault in the second degree in violation of General Statutes § 53a-60. He was released after posting a $50,000 surety bond. Two days later, on June 14, 1991, he was arrested and charged with threatening in violation of General Statutes § 53a-62 and was released after posting a $5000 surety bond.

The state filed a motion pursuant to § 54-64f to revoke the defendant's release alleging that (1) the

---

[5] By a corrected order on the defendant's petition for certification to appeal, we granted certification limited to the following questions: "(1) Does the order of the Appellate Court granting review but denying relief with respect to the defendant's motion for review of the trial court's order revoking the defendant's release on bond pursuant to Connecticut General Statutes § 54-64f constitute a final judgment reviewable by this court pursuant to Connecticut General Statutes § 51-197f? (2) If the order of the Appellate Court is reviewable, does Connecticut General Statutes § 54-64f as applied to the defendant violate the right of bail provision of article first, § 8, of our state constitution?"

[6] All charges stemmed from an incident that occurred on May 28, 1991.

defendant had been released on bail following his arrest on June 4, 1991, for a criminal offense punishable by more than ten years imprisonment, and (2) the defendant had violated the conditions of his release by violating the criminal laws of this state.

At the June 20, 1991 evidentiary hearing on the state's motion to revoke release held pursuant to § 54-64f (a), the state offered the testimony of I. Charles Mathews, deputy mayor of Hartford, who testified that, while on his way to a local radio station on the morning of June 12, 1991, he had been severely beaten about the head and body by a man wielding a steel pipe.[7] Mathews, who remained in the hospital for two days following the assault, required treatment for a head wound and received stitches in both legs. At the hearing, Mathews positively identified the defendant as his assailant and then testified that he had never seen the defendant before and did not know what had precipitated the attack. He further testified that he was receiving police protection and was in fear of the defendant.

The trial court, *Barry, J.,* applying the criteria of subsection (c) of § 54-64f,[8] found that probable cause

---

[7] Mathews testified that the steel pipe "was maybe . . . three foot long . . . about the length of a baseball bat. And the thickness, it was about maybe—it appeared to be anywhere from a[n] inch and a half to two inches [in] diameter." Mathews also testified that, at the time of the assault, he had been recovering from surgery performed the previous week.

[8] The state and the defendant both maintain on appeal that the defendant's release was revoked pursuant to subsection (b) of the statute. The transcripts of the bail revocation hearing, however, make it clear that the trial court, *Barry, J.,* applied subsection (c) to revoke the defendant's release. The following colloquies occurred at the bail revocation hearing:

"The Court: . . . You allege that reasonable conditions of bail were violated. You're then—what you're moving for is a hearing under 54-64f, correct?

"Mr. O'Reilly: That's correct.

"The Court: And—

"Mr. O'Reilly: Subsection C then, Your Honor.

existed to believe that the defendant had committed a federal, state or local crime while on release, and further found by clear and convincing evidence that the safety of another person, namely Mathews, was endangered while the defendant was on release. It stated that these findings gave rise to a rebuttable presumption that the defendant's release should be revoked, which, it concluded, the defendant had failed to rebut. At the conclusion of the evidentiary hearing, the trial court ordered that the defendant's release under the initial bond of $25,000 be revoked.

On July 19, 1991, the defendant filed a motion to dismiss the first information or in the alternative to set new conditions of release. The trial court, *Kocay, J.*, after hearing oral argument by the parties on July 31, 1991, denied the defendant's motion on August 2, 1991, and declined to set bond. On August 8, 1991, the defendant filed a motion for review of bond in the Appellate Court pursuant to § 54-63g.[9] On September 8, 1991, the Appellate Court granted the motion for review and denied the relief requested. The defendant filed a petition for certification in this court. On October 9, 1991, by a corrected order on the defendant's petition for certification to appeal; see footnote 5, supra; we granted certification on two questions: (1) procedurally, does this court have jurisdiction to con-

---

"The Court: That's what I was going to ask you, is it B or C?

"Mr. O'Reilly: It's C, Your Honor.

\* \* \*

"The Court: So that's your—that's what you're asking for is an evidentiary hearing under 54-64f (c) in order to convince the court that the bond of twenty-five thousand dollars should be revoked?

"Mr. O'Reilly: That's correct, Your Honor."

Moreover, the trial court made no finding, as required by subsection (b), that the state had shown by *clear and convincing evidence* that the defendant had violated a condition of his release. Accordingly, we are concerned in this appeal only with the application of § 54-64f (c) to the defendant.

[9] On August 12, 1991, we denied the defendant's request that the motion for review be transferred to this court.

sider the defendant's claim, and (2) substantively, does article first, § 8 of our state constitution, which establishes a right to bail in criminal prosecutions, render the bail revocation provisions of § 54-64f (c) unconstitutional in the circumstances of this case?

I

The first issue that we must address is whether this court has jurisdiction to consider the merits of the defendant's interlocutory appeal within the confines of our authority to certify appeals from the Appellate Court. If we conclude that such jurisdiction is lacking, the question then arises whether any other avenue of appellate review is appropriate in the particular circumstances of this case.

The statute that governs our certification jurisdiction is General Statutes § 51-197f, which provides that this court may certify cases for review "[u]pon final determination of any appeal by the appellate court . . . ." This court has previously dismissed petitions for certification from decisions of the Appellate Court denying leave to appeal in a zoning matter; *Ingersoll* v. *Planning & Zoning Commission,* 194 Conn. 277, 278–79, 479 A.2d 1207 (1984); and denying relief on a motion for review. *State* v. *Carter,* 212 Conn. 811, 564 A.2d 1072 (1989). We have thus consistently observed the statutory mandate that our jurisdiction to review decisions of the Appellate Court is not plenary but is limited to final judgments by that court. We have never construed Practice Book § 4126, which describes our review of "causes" decided by the Appellate Court, as having been intended to enlarge our statutory jurisdiction.

In this case, the Appellate Court did not undertake finally to determine an appeal. Instead, in accordance with § 54-63g, the Appellate Court granted the defendant's petition for review of the revocation of his bail

but denied the relief that he had requested. That decision was neither the determination of "an appeal" nor action that constituted a final judgment. In a criminal proceeding, there is no final judgment until the imposition of a sentence. *State* v. *Coleman,* 202 Conn. 86, 89, 519 A.2d 1201 (1987); *State* v. *Grotton,* 180 Conn. 290, 293, 429 A.2d 871 (1980).

It may be true, as the defendant contends, that some interlocutory orders are directly appealable to a court that has the statutory jurisdiction to hear them. The general rule is, however, that interlocutory orders in criminal cases are not immediately appealable. *United States* v. *MacDonald,* 435 U.S. 850, 857, 98 S. Ct. 1547, 56 L. Ed. 2d 18 (1978) (denial of motion for speedy trial); *Cogen* v. *United States,* 278 U.S. 221, 227–28, 49 S. Ct. 118, 73 L. Ed. 275 (1929) (denial of motion for return of seized property); *State* v. *Atkins,* 203 Conn. 33, 34, 522 A.2d 1234 (1987) (finding of probable cause to believe criminal offense has been committed); *In re Juvenile Appeal (85-AB),* 195 Conn. 303, 306, 488 A.2d 778 (1985) (denial of a motion to transfer to the criminal docket); *State* v. *Longo,* 192 Conn. 85, 89, 469 A.2d 1220 (1984) (denial of motion for youthful offender status); *State* v. *Spendolini,* 189 Conn. 92, 97, 454 A.2d 720 (1983) (denial of motion for accelerated rehabilitation); *State* v. *Grotton,* supra, 295–96 (granting of state's motion to take nontestimonial evidence from defendant); *State* v. *Kemp,* 124 Conn. 639, 646–47, 1 A.2d 761 (1938) (permitting defendant access to grand jury minutes); compare *State* v. *Aillon,* 182 Conn. 124, 126, 438 A.2d 30 (1980), cert. denied, 449 U.S. 1090, 101 S. Ct. 883, 66 L. Ed. 2d 817 (1981) (colorable double jeopardy claim immediately appealable). Notably, this court has reviewed, on appeal after a final judgment, a criminal defendant's claim that the trial court had violated his state constitutional right to be released on bail. *State* v. *Olds,* 171 Conn. 395, 404, 370 A.2d 969 (1976).

Even when we have entertained the possibility that an interlocutory order in a criminal case might warrant an immediate appeal; see *State* v. *Curcio,* 191 Conn. 27, 463 A.2d 566 (1983); we have recognized that "[t]he right of appeal is purely statutory." Id., 30. The legislature has the authority to make interlocutory orders immediately appealable; see, e.g., General Statutes § 52-278*l* (prejudgment remedies) and General Statutes § 52-405 (accounting); or to characterize interlocutory orders as final judgments for the purposes of an appeal. See, e.g., General Statutes § 54-56e (denial of motion to dismiss upon completion of accelerated rehabilitation program or termination of participation in such a program). There is, however, no statutory authority that confers on the defendant a right to an interlocutory appeal in this case.

The legislature also has the authority to make interlocutory orders immediately reviewable, in summary fashion, by authorizing petitions for review, usually within a limited time period, and often specifically to the Appellate Court. See, e.g., General Statutes § 51-164x (closure orders); General Statutes § 54-47g (a) (grand jury disclosures). With respect to the petition for review authorized in this case by § 54-63g, as with regard to §§ 51-164x and 54-47g (a), the legislature has designated the Appellate Court, and not this court, as the appropriate forum for the disposition of such petitions. Statutory permission to file a petition for review does not authorize the filing of a full-fledged appeal, either in the Appellate Court or in this court. The limited review contemplated by § 54-63g does not confer jurisdiction on this court to grant certification to reconsider the merits of the action taken by the Appellate Court. Absent statutory authorization, this court has no inherent judicial authority to grant certification to hear appeals concerning contested orders of trial court

judges. See *In re Judicial Inquiry No. 85-01,* 221 Conn. 625, 605 A.2d 545 (1992); see also *State* v. *Gross,* 109 Conn. 738, 147 A. 670 (1929).

In light of these precedents, the petition for certification to appeal under § 51-197f must therefore be dismissed. As in *State* v. *Carter,* supra, we have no jurisdiction to grant a certified appeal to review the Appellate Court's disposition of a petition for review under § 54-63g.

The question that remains, however, is whether there is any other jurisdictional basis for this court to consider the serious constitutional issues that the defendant has raised. The special circumstances of this case fit within the substantive ambit of General Statutes § 52-265a (a),[10] which allows the chief justice to certify a direct appeal to the Supreme Court from an interlocutory order of the Superior Court on an issue of law that "involves a matter of substantial public interest and in which delay may work a substantial injustice." To avail himself of this special right to appeal, however, a litigant must ordinarily request certification "within two weeks from the date of the issuance of the order or decision" of the Superior Court for which expedited review is being sought. Because of the defendant's recourse to the petition for review authorized by § 54-63g, he can no longer comply with these time constraints.

---

[10] General Statutes § 52-265a provides in relevant part: "DIRECT APPEAL ON QUESTIONS INVOLVING THE PUBLIC INTEREST. (a) Notwithstanding the provisions of sections 52-264 and 52-265, any party to an action who is aggrieved by an order or decision of the superior court in an action which involves a matter of substantial public interest and in which delay may work a substantial injustice, may appeal under this section from the order or decision to the supreme court within two weeks from the date of the issuance of the order or decision. The appeal shall state the question of law on which it is based.

"(b) The chief justice shall, within one week of receipt of the appeal, rule whether the issue involves a substantial public interest and whether delay may work a substantial injustice."

The Supreme Court will, nonetheless, treat the defendant's petition for certification under § 51-197f as a late petition for certification under § 52-265a (a). The chief justice has agreed to waive the defendant's delay in filing this petition, and has determined that the defendant's challenge to the constitutionality of § 54-64f warrants an immediate appeal from the order of the Superior Court in accordance with § 52-265a (a). The merits of the defendant's appeal are therefore properly before this court.

## II

We now turn, therefore, to consider the second certified question on appeal, that is whether General Statutes § 54-64f (c), as applied to the defendant, violated the right of bail provision of article first, § 8 of our state constitution. We conclude that it did not.

Section 8 of article first provides that "[i]n all criminal prosecutions, the accused shall have a right . . . to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great . . . ." We have previously concluded that this provision guarantees bail in a reasonable amount in "all cases, even capital cases not falling within the exception." *State* v. *Menillo,* 159 Conn. 264, 269, 268 A.2d 667 (1970); see also *State* v. *Aillon,* 164 Conn. 661, 295 A.2d 666 (1972).[11] The defendant has

---

[11] The defendant raises his claim under the Connecticut constitution only. The guaranty provided in article first, § 8 is more detailed in scope and broader than that contained in the eighth amendment to the United States constitution, which provides only that "[e]xcessive bail shall not be required." The United States Supreme Court has construed the bail clause of the federal constitution and concluded that it does not confer or recognize a right of bail, but only guarantees that *if* bail is imposed it must not be excessive. *United States* v. *Salerno,* 481 U.S. 739, 752–55, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987); see also *Roberson* v. *State,* 501 F.2d 305, 308 (2d Cir. 1974) (no absolute federal constitutional right to bail after a state conviction).

a fundamental constitutional right to bail pending trial in all but certain capital offenses. *State* v. *Olds,* supra.

Pursuant to bail reform undertaken in 1990, the legislature amended many of the provisions on bail contained in the General Statutes and added others. For persons arrested and charged with certain class A, B, C and D felonies, General Statutes § 54-64a, amended pursuant to Public Acts 1990, No. 90-213, § 51, authorizes a trial court to impose nonfinancial conditions of release that it determines will "reasonably assure the appearance of the arrested person in court and that the safety of any other person will not be endangered." Section 54-64e imposes as a nonfinancial condition of all pretrial and posttrial releases that "the person released not commit a federal, state or local crime during the period of release." Section 53 of Public Acts 1990, No. 90-213, codified as § 54-64f, enumerates possible sanctions for violation of a condition of release or the commission of a crime while on release, ranging from the imposition of different or additional conditions of release to the revocation of release where the defendant is on release with respect to an offense with a possible term of imprisonment of ten or more years. General Statutes § 54-64f (b) and (c). "The revocation of a defendant's release . . . shall cause any bond posted in the criminal proceeding to be automatically terminated and the surety to be released." General Statutes § 54-64f (d).

Consequently, the condition that the defendant not commit any federal, state or local crime was automatically imposed upon the defendant's pretrial release from confinement on June 5, 1991. Subsection (b) of § 54-64e requires that, at the time of release, the defendant be notified in writing: "(1) Of the condition specified in subsection (a) of this section and any additional conditions of release; (2) that violation of any condition of release may result in the imposition of

different or additional conditions of release; (3) that if he is released with respect to an offense for which a term of imprisonment of ten or more years may be imposed and the court finds that he has violated any condition of release and the safety of any other person is endangered while he is on release, his release may be revoked." The defendant has not challenged the adequacy of the notice that he received.

In light of the certified questions that limited the defendant's constitutional challenge to his right to bail in the circumstances of this case,[12] we construe the defendant's argument on appeal as having two components. First, the defendant urges us to construe § 54-64f (c), in order to preserve the statute's constitutionality, to require the setting of a new bond as the only penalty for breach of conditions of release. Second, the defendant maintains that if such a construction is not adopted, it was constitutionally imper-

---

[12] We do not review the defendant's claim that General Statutes § 54-64f is unconstitutional on its face because certification on this appeal was requested and granted on the limited issue of whether the statute was applied to the defendant in an unconstitutional manner. See Practice Book § 4138. The United States Supreme Court has noted that to mount a facial challenge to a statute, one must "establish that no set of circumstances exists under which the Act would be valid. The fact that the [Act] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment. *Schall* v. *Martin,* [467 U.S. 253, 269 n.18, 104 S. Ct. 2403, 81 L. Ed. 2d 207 (1984)]." *United States* v. *Salerno,* 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987). Because certification was granted to consider only the application of the statute to this defendant, we need not consider in this appeal whether the application of § 54-64f to another defendant under different circumstances might result in a deprivation of constitutional rights.

Moreover, we do not review the defendant's claim, raised at oral argument, that the revocation of bail violates the principle that one is presumed innocent until proven guilty. The defendant neither requested nor was granted certification on that issue. Without deciding the merits of that claim, we note that the United States Supreme Court addressed the issue of bail and its relation to the presumption of innocence in *Bell* v. *Wolfish,* 441 U.S. 520, 533, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979).

missible for the trial court to apply the statute in this case to revoke his bond in its entirety.[13]

## A

We reject the defendant's statutory construction argument as inconsistent with the language of § 54-64f (c). Subsection (c) provides that "[i]f the defendant is on release with respect to an offense for which a term of imprisonment of ten or more years may be imposed and the court, after an evidentiary hearing, finds by clear and convincing evidence that the safety of any other person is endangered while the defendant is on release and that there is probable cause to believe that the defendant has committed a federal, state or local crime while on release, there shall be a rebuttable presumption that his release should be revoked." Despite its clear language, relying on the admonition that "when presented with a constitutional challenge to a validly enacted statute, [we] construe the statute, if possible, to comport with the constitution's requirements"; *Rules Committee of the Superior Court* v. *Freedom of Information Commission,* 192 Conn. 234, 240, 472 A.2d 9 (1984); the defendant and the amicus urge us to construe § 54-64f (c) to require that a new and perhaps higher bond, with additional conditions, be ordered following revocation.

"Statutory language is to be given its plain and ordinary meaning unless such meaning is clearly at odds with the legislative intent." *State* v. *Taylor,* 153 Conn. 72, 82, 214 A.2d 362 (1965), cert. denied, 384 U.S. 921, 86 S. Ct. 1372, 16 L. Ed. 2d 442 (1966); see also *Kil-*

---

[13] The defendant does not argue in this appeal that a trial court lacks the power to attach reasonable nonfinancial conditions of release upon a criminal defendant's pretrial release from prison, that the nonfinancial conditions placed upon his release were unreasonable or that evidence was lacking to show probable cause that he had violated the laws of this state. The defendant further does not claim that the trial court, in revoking his pretrial release from prison, violated any of his due process rights.

*duff* v. *Adams, Inc.,* 219 Conn. 314, 336–37, 593 A.2d 478 (1991). Section 54-64f (c) provides that a trial court may, in certain circumstances, *revoke* a defendant's *release.* Revoke means to "annul or make void by recalling or taking back. To cancel, rescind, repeal, reverse, as to revoke a license or will." Black's Law Dictionary (6th Ed. 1990). Absent language indicating that the legislature intended a new release to be granted in all cases, the use of the term "revoke" denotes finality. Read literally, therefore, § 54-64f (c) authorizes the permanent revocation of release.

The conclusion that the legislature in § 54-64f (c) contemplated permanent revocation is further bolstered by language in the first part of § 54-64f (b). Subsection (b) permits the trial court, upon a violation of a condition of release, to "impose different or additional conditions" upon a defendant's release where the offense for which the defendant is released has a maximum sentence of less than ten years. If the legislature, by using the term "revoke" in the remaining part of subsection (b) and subsection (c), had intended that, following revocation of release, the trial court must always grant a new release on new or different terms, the language of the first part of subsection (b) would be rendered meaningless. "Such an interpretation undercuts the established principle that no part of a legislative enactment is to be treated as insignificant or unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase . . . ." (Internal quotation marks omitted.) *State* v. *Delossantos,* 211 Conn. 258, 274, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989).

B

For three reasons, we conclude that § 54-64f (c) was not unconstitutionally applied in this case. First, the statute, properly viewed, implements the inherent judi-

cial authority of trial courts to compel compliance with conditions of release. Second, revocation of release is consistent with ensuring a defendant's appearance in court. Third, good behavior while on pretrial release has been recognized historically as a legitimate purpose of bail in this state.

The fundamental right to bail guaranteed under our state constitution must be qualified by a court's authority to ensure compliance with the conditions of release. While released on bail prior to trial, a defendant is still within the constructive custody of the law. *State* v. *Bates,* 140 Conn. 326, 330–31, 99 A.2d 133 (1953). The trial court retains jurisdiction over the conditions of release; see General Statutes §§ 54-69 to 54-69b; Practice Book § 673; and possesses the inherent authority " 'to exercise powers; to implement and enforce laws; to exact obedience.' " *In re Dodson,* 214 Conn. 344, 350, 572 A.2d 328, cert. denied, 498 U.S. 896, 111 S. Ct. 247, 112 L. Ed. 2d 205 (1990); see also *State* v. *Howell,* 80 Conn. 668, 671, 69 A. 1057 (1908). One court has noted that "a specific statute granting the trial court authority to revoke bail [upon the violation of a reasonable condition of release] is not necessary, since a court with jurisdiction over a criminal case has the power to enforce its orders as to bail just as it has control over other orders." *Mello* v. *Superior Court,* 117 R.I. 578, 583–84, 370 A.2d 1262 (1977).

We agree with the state that the power to enforce reasonable conditions of release is a necessary component of a trial court's jurisdiction over a criminal case. Indeed, since 1976, the rules of court of this state have provided that "[a]fter a hearing and upon a finding that the defendant has violated reasonable conditions imposed on his release, the judicial authority may impose different or additional conditions upon the defendant's release or *revoke his release.*" (Emphasis added.) Practice Book, 1963 as amended to 1976, § 2094

(now § 683). In this case, an explicit condition placed upon the defendant's release on bail was to refrain from committing any federal, state or local crimes. The trial court allowed the defendant's pretrial release from confinement, and the defendant acquiesced in the trial court's condition of release. The defendant was subsequently arrested on charges that, while on release, he had engaged in an unprovoked brutal assault on Mathews in broad daylight. Upon the trial court's finding of probable cause to believe that the defendant had committed this crime, it had the power, either pursuant to its jurisdiction over the criminal case, or pursuant to § 54-64f (c),[14] to revoke the defendant's release.

Standards promulgated by the American Bar Association are in accord with this view. They note that "[t]he concept of conditional pretrial release would be meaningless if courts lacked the power to rescind release after release conditions have been violated. . . . Defendants who have violated those terms have disregarded judicial orders. As long as they are proceeded against in a constitutionally fair fashion, they may be incarcerated in the same manner as persons convicted of contempt." American Bar Association Standards for Criminal Justice, Pretrial Release Standards (1985 Rev.) § 10-5.8 (a), p. 129.

Revocation of the defendant's release did not encroach upon his constitutional right to be released on bail. The defendant's failure to abide by the conditions of his release resulted in a forfeiture of his right to release.[15] Because the defendant was initially

---

[14] General Statutes § 54-64f requires the additional finding, by clear and convincing evidence, that the defendant poses a danger to another individual while on release.

[15] This forfeiture of the right to release pending trial is analogous to a defendant's forfeiture of the right to attend his criminal trial. In *Illinois* v. *Allen*, 397 U.S. 337, 343, 90 S. Ct. 1057, 25 L. Ed. 2d 353, reh. denied, 398 U.S. 915, 90 S. Ct. 1684, 26 L. Ed. 2d 80 (1970), the United States

released on bail, the requirements of article first, § 8, as announced by this court in *State* v. *Menillo,* supra, were met. As one court noted, in effect, "the keys to continued freedom [were] left in the pocket of the accused." *Rendel* v. *Mummert,* 106 Ariz. 233, 238, 474 P.2d 824 (1970). Having been released on bail, and having subsequently violated the condition placed upon the release that he not commit a federal, state or local crime, the defendant cannot be heard to complain that his constitutional right to bail was violated.

Our conclusion that the trial court had the authority to revoke the defendant's bail is not inconsistent with our statement in *State* v. *Menillo,* supra, 269, that the "fundamental purpose of bail is to ensure the presence of an accused throughout all proceedings." See also *State* v. *Bates,* supra, 330. It is reasonable to suppose that a defendant who is arrested and charged with the commission of additional and serious crimes while on pretrial release might, as a result of these charges, more readily be tempted to flee the jurisdiction.

The historical roots of the right to bail in this state illuminate the proposition that the constitution of 1818 was not intended to provide the defendant with an unconstricted right to bail. To comprehend the true import of the right to bail under our constitution, it is helpful to consider the historical record of the period before and at the time of the adoption of the provision. See *State* v. *Barton,* 219 Conn. 529, 538–39 n.4, 541 n.8, 594 A.2d 917 (1991); *State* v. *Lamme,* 216 Conn. 172, 178–81, 579 A.2d 484 (1990).

Consideration of the customary purposes of bail prior to the adoption of the constitution of 1818 supports the

Supreme Court held that "a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom."

conclusion that, while ensuring the appearance of the defendant is a *primary* purpose of bail in this state, it is not necessarily the sole purpose. The statutory right to bail in Connecticut is traceable to a 1672 legislative enactment declaring that "no mans person shall be Restrained or Imprisoned by any Authority whatsoever, before the Law hath sentenced him thereunto if he can put in sufficient security, bayl or mainprize for his appearance and *good behaviour* in the mean time, unless it be in Crimes Capital, and Contempt in open Court, or in such cases where some express Law doth allow it." (Emphasis added.) The Laws and Liberties of Connecticut Colonie, reprinted in The Laws of Connecticut: An Exact Reprint of the Original Edition of 1673 (G. Brinley Ed. 1865) p. 32; see also The Public Statute Laws of Connecticut, tit. I, p. 24 n.7 (1808); C. Collier, "The Connecticut Declaration of Rights Before the Constitution of 1818: A Victim of Revolutionary Redefinition," 15 Conn. L. Rev. 87, 93 n.19 (1982). A substantially identical provision on bail was included in the 1750 revision of the Declaration of Rights; see The Public Statute Laws of Connecticut, supra; see also C. Collier, supra; which, we have stated, "had constitutional overtones even though it was statutory in form." *State* v. *Lamme,* supra, 179; see also C. Collier, supra, 94; 2 Z. Swift, A System of the Laws of the State of Connecticut (1796) p. 391 ("[i]n respect of bail, our law determines that no man's person shall be restrained, or imprisoned by any authority whatever, before the law has sentenced him thereto, if he can or will give sufficient security, bail, or mainprize, for his appearance and good behaviour in the mean time").

Neither the text of the 1818 constitution[16] nor that of any subsequent constitution has made express reference in

___

[16] Article first, § 14 of the constitution of 1818 provided in relevant part: "All prisoners shall, before conviction, be bailable by sufficient sureties, except for capital offences, where the proof is evident, or the presumption great . . . ."

its bail provision to the defendant's appearance or to the defendant's good behavior. Legislative references to either purpose were eliminated from statutes enacted after 1818 and before 1849, while language providing that bail was conditioned upon a defendant's appearance before the court reappeared in statutes enacted in 1949 and remained thereafter. There is no evidence, however, that the framers of the 1818 constitution intended to abandon the customary purposes of bail that were in effect at the time of the adoption of the constitution and had been for at least 145 years. This court has previously stated that "[t]he constitution adopted in 1818 did not create a government but gave to that which had already been established the sanction of the people and, in very general language, formulated its framework." *Dowe* v. *Egan,* 133 Conn. 112, 119, 48 A.2d 735 (1946); see also C. Collier, supra, 96 ("the substance of the ancient statutory and common law protections continued unchanged" following the adoption of the Bill of Rights in 1818).

In 1981 the legislature expressly authorized a defendant's pretrial release upon a written notice to appear with nonfinancial conditions imposed. Public Acts 1981, No. 81-437. Prior to 1981, a defendant was either released upon execution of a written promise to appear or upon a bond with or without surety. General Statutes (Rev. to 1981) § 54-64a. Conditioning pretrial release on a defendant's ability to meet a financial bond set by the court emphasizes the appearance aspect of bond more so than do many nonfinancial conditions commonly imposed now pursuant to § 54-64a (c). The use of nonfinancial conditions of release in addition to or in lieu of bond has broadened the focus of the purposes of bail to recognize, once again, that bail is a method for ensuring a defendant's good behavior while on release.

The courts of numerous other states with constitutional provisions similar to ours concur that a defendant's bail can be revoked following the violation of a condition of release or for the commission of a crime while on release. In *Taglianetti* v. *Langlois,* 105 R.I. 596, 600, 253 A.2d 609 (1969), the Rhode Island Supreme Court held that its constitution, like ours, provided bail as a matter of right in all but capital cases.[17] Nevertheless, in *Mello* v. *Superior Court,* supra, reasoning that a defendant's pressure to flee increases when he commits crimes while free on bail; id., 582; the court held that revocation of bail is a proper remedy for violating a condition imposed upon a defendant's release. Id., 585. It rejected the defendant's claim that the trial court may only set new and higher bail with more stringent conditions, stating that "we do not think our Constitution must be read as providing a continuing, renewable right to bail on the same charge where a bail condition has been breached. The state need not keep freeing the defendant while upping the ante." Id., 583. It further noted that "[t]he authority of the court to revoke bail in certain situations ought not to be construed as authority to exercise preventive detention. The former is a sanction for past acts, the latter a prophylactic for the future. We are concerned with the

---

[17] Article first, § 9 of the Rhode Island constitution provided: "All persons imprisoned ought to be bailed by sufficient surety, unless for offences punishable by death or by imprisonment for life, when the proof of guilt is evident or the presumption great." See *Taglianetti* v. *Langlois,* 105 R.I. 596, 597, 253 A.2d 609 (1969). In 1988, article first, § 9 of the Rhode Island constitution was amended to provide that bail was not required for offenses punishable by *life imprisonment or certain drug offenses.* In *Witt* v. *Moran,* 572 A.2d 261, 264 (R.I. 1990), the court concluded that the defendants in that case, charged with drug offenses, did not have a constitutional right to bail. After considering *United States* v. *Salerno,* 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987), the court further concluded that, under its constitutional provision, it was permissible to hold a defendant without bail in the first instance in order to prevent danger to the community. *Witt* v. *Moran,* supra, 265.

former." Id., 585; see also *Bridges* v. *Superior Court,* 121 R.I. 101, 105 n.3, 396 A.2d 97 (1978).

In *People ex rel. Hemingway* v. *Elrod,* 60 Ill. 2d 74, 83–84, 322 N.E.2d 837 (1975), the Illinois Supreme Court recognized a trial court's authority to revoke a defendant's release on bail for the violation of a condition of release or the commission of a serious crime while awaiting trial.[18] It concluded that, while "[t]he object of bail, of course, is to make certain the defendant's appearance in court"; id., 81; "[t]he court has the inherent authority to enforce its orders and to require reasonable conduct from those over whom it has jurisdiction." Id., 83. The court emphasized that by concluding that a defendant's bail could be revoked for violating a condition of release, it was "not adopting the principle of preventive detention of one charged with a criminal offense for the protection of the public" and declined to discuss "the wisdom or the constitutionality of that principle." Id., 80; see also *Rendel* v. *Mummert,* supra, 237–38; *Gardner* v. *Murphy,* 402 So. 2d 525, 526 (Fla. App. 1981); *State* v. *Albert,* 312 N.C. 567, 575, 324 S.E.2d 233 (1985); *State* v. *Brown,* 136 Vt. 561, 565–66, 396 A.2d 134 (1978); but see *Reeves* v. *State,* 261 Ark. 384, 548 S.W.2d 822 (1977) (revocation of pretrial release without setting new bail deemed unconstitutional). In our view, the Connecticut constitution confers upon our trial courts a similar authority, in the proper circumstances, to revoke a defendant's bail for serious noncompliance with the conditions of his release.

The certified appeal is dismissed; upon the granting of review pursuant to General Statutes § 52-265a, the order of the trial court is affirmed.

---

[18] Article first, § 9 of the Illinois constitution provided: "All persons shall be bailable by sufficient sureties, except for capital offenses where the proof is evident or the presumption great." See *People ex rel. Hemingway* v. *Elrod,* 60 Ill. 2d 74, 76, 322 N.E.2d 837 (1975).

In this opinion CALLAHAN, COVELLO and BORDEN, Js., concurred.

BERDON, J., dissenting. Today, the majority ignores the plain language of our state constitution, which provides that every person who is charged with a crime is entitled "to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great . . . ." Conn. Const., art. I, § 8. I disagree with the majority on how it reaches the merits of the issue and also on its interpretation of our state charter of liberty.

I

I do not believe that the chief justice is required to invoke General Statutes § 52-265a[1] to hear the present appeal from the Appellate Court's denial of the relief requested in the petition to be admitted to bail by the defendant, Enrique Ayala. General Statutes § 51-197f provides that this court may certify cases for review "[u]pon final determination of any appeal by the appel-

---

[1] General Statutes § 52-265a provides: "(a) Notwithstanding the provisions of sections 52-264 and 52-265, any party to an action who is aggrieved by an order or decision of the superior court in an action which involves a matter of substantial public interest and in which delay may work a substantial injustice, may appeal under this section from the order or decision to the supreme court within two weeks from the date of the issuance of the order or decision. The appeal shall state the question of law on which it is based.

"(b) The chief justice shall, within one week of receipt of the appeal, rule whether the issue involves a substantial public interest and whether delay may work a substantial injustice.

"(c) Upon certification by the chief justice that a substantial public interest is involved and that delay may work a substantial injustice, the trial judge shall immediately transmit a certificate of his decision, together with a proper finding of fact, to the chief justice, who shall thereupon call a special session of the supreme court for the purpose of an immediate hearing upon the appeal.

"(d) The chief justice may make orders to expedite such appeals, including orders specifying the manner in which the record on appeal may be prepared."

late court." The present appeal is from a final determination by the Appellate Court regarding the defendant's constitutional right to be free on bail prior to conviction. Any judicial determination depriving a person of liberty, which never can be returned to him or her, constitutes a final judgment. Indeed, I cannot think of anything else more final. Accordingly, this court has jurisdiction under § 51-197f to hear the appeal.

If not a final judgment, the Appellate Court's denial of the relief requested surely comes within the second exception of *State* v. *Curcio,* 191 Conn. 27, 31, 463 A.2d 566 (1983)—that is, "where the order or action so concludes the rights of the parties that further proceedings cannot affect them."[2] Again, if the defendant was improperly denied bail, further proceedings cannot affect that right because his lost freedom cannot be returned to him.

Furthermore, the procedural posture of this case requires that we exercise our general supervisory authority over the Appellate Court. Practice Book § 4127 (3). After the trial court refused to set a new bond once the defendant's pretrial release was revoked pursuant to General Statutes § 54-64f, the defendant filed a petition for review with the Appellate Court raising substantial questions of first impression for this state, which included whether § 54-64f passes muster under our state constitution. Even though the defendant complained that he was being unconstitutionally deprived of his liberty, the Appellate Court denied the defendant's request for relief sought in the motion to review without setting forth its reasons, either in written or oral form.

---

[2] In *State* v. *Curcio,* 191 Conn. 27, 31, 463 A.2d 566 (1983), this court held that an otherwise interlocutory order or ruling of the Superior Court is appealable in two circumstances: "(1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them."

Although I do not agree that it was necessary to invoke § 52-265a, I do agree that the defendant "is aggrieved by an order or decision of the superior court in an action which involves a matter of substantial public interest and in which delay may work a substantial injustice." General Statutes § 52-265a (a). Since the chief justice made her certification under § 52-265a (b), we surely have jurisdiction.

I am concerned, however, that since the statute provides for only vague statutory guidelines, the chief justice, in writing for the majority, did not provide an analytical framework for the application of § 52-265a. We, therefore, do not have the benefit of any guidance for future cases, especially in situations, such as this case, wherein the chief justice invoked the jurisdiction of this court under § 52-265a on her own motion, notwithstanding the requirements of that statute.[3] I am sure that the legislature, in granting this discretion to one justice, albeit the chief justice, did not intend to grant that justice unbridled discretion.[4]

[3] See footnote 1, supra.

[4] In the twenty-five years since General Statutes § 52-265a was adopted by the legislature, it has been the basis of our jurisdiction in only eight cases. See *Canning* v. *Lensink,* 221 Conn. 346, 347, 603 A.2d 1155 (1992) (review granted upon application by the state to review trial court's refusal to strike a civil case from the jury docket); *Moshier* v. *Goodnow,* 217 Conn. 303, 304–305, 586 A.2d 557 (1991) (review granted upon application by the board of selectmen of the town of Old Saybrook to determine the board's taxing authority when the voters of the town rejected the town budget); *State* v. *Breton,* 212 Conn. 258, 259, 562 A.2d 1060 (1989) (review granted upon application by the state to review whether the "especially cruel" aggravating factor in the death penalty statute was unconstitutionally vague); *Fernandez* v. *Fernandez,* 208 Conn. 329, 331, 545 A.2d 1036 (1988), cert. denied, 493 U.S. 958, 110 S. Ct. 376, 107 L. Ed. 2d 361 (1989) (review granted upon application by the defendant to determine the applicability of the doctrine of diplomatic immunity for an action for marital dissolution); *State* v. *Ross,* 208 Conn. 156, 157, 543 A.2d 284 (1988) (review granted upon application by the Connecticut Law Tribune to determine whether it was entitled to portions of the transcript of a criminal prosecution); *Westport* v. *State,* 204 Conn. 212, 213–14, 527 A.2d 1177 (1987) (review granted upon appli-

One further preliminary matter needs comment. It is implicit in the chief justice's certification under § 52-265a that she finds that the present issue "involves a matter of substantial public interest," and I agree, as indicated above. Under these circumstances, the chief justice should have ordered reargument of this case before the full court so that the people of the state would have the benefit of all the justices' opinion on this important issue involving the deprivation of a person's liberty.[5] See General Statutes § 51-207.

## II

I also disagree with the majority's disposition of the merits of the present case. The plain, clear and concise language of our bail provision in the state constitution requires that "[i]n all criminal prosecutions, the accused shall have a right . . . to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great . . . ." Conn. Const., art. I, § 8. Today, the majority, in interpreting that § 54-64f permits the court to revoke the bond of the defendant without setting a new bond, imports on our state constitution a "good behavior" clause that it claims was engrafted there as a result of statutory and common law precedent. It seems to me that if good behavior was an exception to the right

cation by the town to review whether the state acted properly when it constructed a temporary truck weighing and inspection station); *Griffin Hospital* v. *Commission on Hospitals & Health Care*, 196 Conn. 451, 452, 493 A.2d 229 (1985) (review granted upon application by the commission to review the trial court's issuance of stay of the commission's actions against the hospital); *Laurel Park, Inc.* v. *Pac*, 194 Conn. 677, 678, 485 A.2d 1272 (1984) (review granted upon application by the state to review the issuance of a temporary injunction by the trial court staying an order of the department of environmental protection closing the Laurel Park landfill).

[5] I have always been, and continue to be, of the opinion that if a case is important enough to be heard by this court, the people of our state are entitled to the opinion of all the justices.

of bail, then the framers of our constitution would have made it explicit, just as they have done for certain capital offenses. Indeed, the chief justice wrote in her dissenting opinion in *Cologne* v. *Westfarms Associates,* 192 Conn. 48, 77, 469 A.2d 1201 (1984), the following: "When constitutional provisions, read in context with each other, guarantee constitutional rights, subject only to the explicit limitation that they shall not be abused, is it proper to add an additional limitation that the constitution itself does not contain? While the intent of the framers is an important resource to *resolve* ambiguity, it is not an appropriate resource to *create* ambiguity. As Dean Ely notes, it is important 'to bring to the fore what seems invariably to get lost in excursions into the intent of the framers, namely that *the most important datum bearing on what was intended is the constitutional language itself.'* (Emphasis in original.) J. Ely, Democracy and Distrust (1980) p. 16. We have recognized the same rule of construction in *Borino* v. *Lounsbury,* 86 Conn. 622, 625, 86 A. 597 (1913), where we relied on 1 Story on the Constitution (5th Ed.) §§ 405, 407, to limit the role of evidence of the intent of the framers of the Connecticut constitution." (Emphasis in original.) This rule applies with equal force in the present case because, as we held in *State* v. *Menillo,* 159 Conn. 264, 269, 268 A.2d 667 (1970), "the bail provision of § 8 of article first of our constitution makes clear that it was intended that in all cases, even capital cases not falling within the exception, bail in a reasonable amount should be ordered."

I do not question the authority of the trial court or the legislature to place reasonable conditions on bail, including a "good behavior" requirement. Because, however, our constitution does not expressly allow for the denial of bail for the breach of a condition, once the bond is revoked because of such a breach, the trial court must set new bail to provide again for the release

of the accused. Undoubtedly, the trial court, in setting the new bail, may consider that the subsequent bad conduct of the accused would increase the likelihood that he or she might flee and, therefore, the trial court could command a higher surety. *Mello* v. *Superior Court,* 117 R.I. 578, 582, 370 A.2d 1262 (1977).

In *Mello,* the issue before the Rhode Island Supreme Court was similar to the issue in the present appeal; that is, whether the complete revocation of bail is a proper remedy for a violation of a condition imposed upon an accused's release. In his dissent, Justice Doris concluded that the violation of a good behavior condition to bail should not strip the accused of the right to be released on bail a second time. Id., 591 (Doris, J., dissenting). He stated that "[i]f a condition of bail is breached, bail may be forfeited and a new bail set. If the breach is flagrant, citation for contempt may be appropriate. But a court should not be allowed to enforce its orders by attempting to withhold constitutional rights." Id., 592. I agree with Justice Doris in *Mello* where he aptly noted that "revocation of bail solely for breach of a condition comes perilously close to preventive detention." Id.

In *Reeves* v. *State,* 261 Ark. 384, 387, 548 S.W.2d 822 (1977), relying in part on article two, §§ 8 and 9 of the Arkansas constitution (1874), the Supreme Court of Arkansas held that a criminal defendant "has an absolute right before conviction, except in capital cases, to a reasonable bail." The court concluded that the imposition of bail with reasonable terms and conditions passes constitutional muster because, if the accused violates the terms of the present bail, the trial court is required to set new and reasonable bail and not refuse any future release of the petitioner on any bail. Id.

The framers of our state constitution placed a high priority on the right to be free pending a determina-

tion of guilt. By drafting article first, § 8 of our constitution, which has its roots in our first constitution; see Conn. Const. of 1818, art. I, § 14;[6] the framers obviously recognized that more than liberty is lost when bail is denied. It is well documented that "[p]retrial detention lessens [the presumption of innocence] because an accused is now treated as a convict before trial. An accused individual loses time and liberty, jobs frequently disappear, family and friend relationships are disrupted. The physical appearance of an accused is affected during this period of detention. This impedes upon the ability to prepare an effective defense. As a result, an accused individual is more likely to be convicted and there is a greater likelihood that a severe sentence will be imposed. This violates due process since an accused individual loses liberty during pretrial detention prior to an adjudication of guilt at trial." Comment, "*United States v. Salerno:* A Reduction of Individual Rights," 15 New Eng. J. on Crim. and Civ. Confinement, 147, 161–62 (1989).

I would hold that, although bail for the defendant may be revoked under § 54-64f, upon application by the defendant, new bail must be set in accordance with the provisions of article first, § 8 of the Connecticut constitution. I would, therefore, order that the Appellate Court remand the matter to the trial court with instructions to set new bail. Accordingly, I respectfully dissent.

---

[6] Article first, § 14 of Connecticut's constitution of 1818 provided: "All prisoners shall, before conviction, be bailable by sufficient sureties, except for capitol offences, where the proof is evident, or the presumption great; and the privilege of the writ of habeas corpus shall not be suspended, unless when in case of rebellion or invasion, the public safety may require it; nor in any case, but by the legislature."