******************************************************************

   The ''officially released'' date that appears near the beginning of this opinion is the date the opinion was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

   This opinion is subject to revisions and editorial changes, not of a substantive nature, and corrections of a technical nature prior to publication in the Connecticut Law Journal.

******************************************************************

STATE OF CONNECTICUT *v.* JERMAINE SMITH
(SC 190482)

The defendant's petition for certification, filed June 16, 2020, for review of the Appellate Court's order (AC 194213) granting review of the trial court's order concerning release on bail but denying the relief requested is dismissed.

July 28, 2020

PER CURIAM. In most circumstances, this court has little or no role in reviewing trial court orders concerning bail or pretrial release of an accused. In the ordinary course, a petition seeking review of such an order is ruled on by our Appellate Court, and the road for review of these petitions pursuant to Practice Book § 78a-1[1] and General Statutes § 54-63g ends there.[2] Although we dismiss the petition for certification to appeal from the order of the Appellate Court in the present case, we recognize that these are unprecedented times and that, as the highest court in our judicial system, we play a critical role in providing guidance to lower courts. All branches of government, and the public we serve, are confronted with a global pandemic that challenges, in every way, how we operate, deliver services, strive to fulfill our core missions, and discharge our constitutional and other legal responsibilities. The conditions created by the pandemic challenge every convention that we typically rely on, reflexively and as a matter of routine, to conduct our business under normal circumstances. Guidance is needed to delineate procedures for the appropriate consideration and disposition of claims like those in the present case during these extraordinary times, and it is our responsibility to provide it. Despite our capacity to do so, we have concluded that it would be unwise to articulate procedural guidelines in the context of this case because of its particular procedural posture. The purpose of this written order is to explain what prevents us from doing so and, in the process, to give trial courts, lawyers, and litigants as much general guidance as possible under the circumstances.

I
FACTS AND PROCEDURAL HISTORY

On April 22, 2020, the defendant, Jermaine Smith, moved for modification of his $250,000 bond and an order granting his release on a promise to appear. In support of his release, he explained that the Department of Correction has experienced an increase in inmates and staff members with confirmed cases of COVID-19. The defendant asserted that his "severe asthma and sleep apnea put him at an alarmingly heightened risk of very serious and even fatal consequences should he contract the virus." According to the defendant, con-

finement under these conditions "violates his [federal] constitutional rights pursuant to the due process clause of the fifth amendment as well as the eighth amendment's prohibition of cruel and unusual punishment . . . ." He requested that the trial court modify his bond and release him from custody as a pretrial detainee.

The trial court held a hearing on the motion on April 27, 2020. The state responded to the defendant's arguments by relying on the seriousness of the allegations and the defendant's criminal history. The trial court agreed with the state and denied the motion for bond reduction "[b]ased on the nature of the allegations [and] the defendant's criminal history . . . ." The defendant sought review of the trial court's order pursuant to Practice Book § 78a-1. The Appellate Court granted review of the trial court's order denying bail modification but denied the relief requested. The defendant then filed a petition for certification with this court on June 16, 2020, requesting review of the Appellate Court's denial of relief.

II
DISCUSSION

The general rule is that "interlocutory orders in criminal cases are not immediately appealable"; *State* v. *Ayala*, 222 Conn. 331, 339, 610 A.2d 1162 (1992); and a judgment becomes final in a criminal case only after the imposition of a sentence. See Practice Book § 61-6 (a) (1). The legislature has provided for an exception when it comes to the setting of a defendant's bail. Specifically, General Statutes § 54-63g permits "[a]ny accused person . . . aggrieved by an order of the Superior Court concerning release, [to] petition the Appellate Court for review of such order." Our own rules of appellate procedure contain the same avenue for review. Practice Book § 78a-1. In *State* v. *Fernando A.*, 294 Conn. 1, 981 A.2d 427 (2009), we observed that an appeal to this court ordinarily would not lie from a trial court order concerning pretrial conditions of release because the "exclusive nondiscretionary remedy from an order concerning conditions of release is a petition to the Appellate Court pursuant to . . . § 54-63g." Id., 5 n.3. We also have adhered to the view that a petition for certification does not lie from the Appellate Court's denial of a petition for review of a defendant's bail determination. See *State* v. *Ayala*, supra, 341; see also *State* v. *McCahill*, 261 Conn. 492, 503, 811 A.2d 667 (2002) ("The petition for review, authorized by § 54-63g, is not an appeal by which we appropriately could exercise jurisdiction via the certification authority conferred upon us by General Statutes § 51-197f."). But see *In re Judicial Inquiry No. 2005-02*, 293 Conn. 247, 254–55, 977 A.2d 166 (2009) (questioning reasoning employed in *Ayala* to reach its jurisdictional holding).

Although there may not have been a bar to our review of the trial court's order regarding bail or pretrial release had the case been presented under a different posture,[3] three related concerns inform our decision not to exer-

cise jurisdiction over the defendant's claims. First, the procedural posture of the case would require us to exercise jurisdiction on grounds that have not been raised by the defendant. Standing alone, this fact may not prevent us from taking the case up nonetheless if that step was warranted, either by the demands of justice or by an overriding public interest in prompt resolution of the underlying legal issues. Our own rules of practice confer broad authority on this court to act to prevent injustice. See Practice Book § 60-1 ("[t]he design of these rules being to facilitate business and advance justice, they will be interpreted liberally in any appellate matter where it shall be manifest that a strict adherence to them will work *surprise or injustice*" (emphasis added)).

This leads to our second concern, which is that the record in the present case is devoid of any evidence regarding the relevant conditions at the correctional facility at which the defendant is incarcerated or the nature and degree of the risk that the defendant claims is heightened by his detention at that facility. We do not necessarily fault the defendant for failing to make a record in this regard because of the difficult circumstances under which the motion for modification was litigated. However, defendants raising claims of this nature should make efforts to provide the trial court with all necessary information,[4] and trial judges need to give defendants an opportunity to do so in cases in which they have raised legitimate health concerns. We do not see how a claim of this kind can be properly litigated or adjudicated in the absence of that information.

Our third reservation is related to the first two. This court has been provided with no information regarding the scope of the problem, if any, beyond the present case. We do not know if any other pretrial detainees have raised similar claims, or whether there is in fact a systemic need for the type of procedural guidance that we anticipate would be required with respect to pretrial detention during this pandemic. Other courts issuing guidelines of this type have done so when confronted with a demonstrated need. See *Committee for Public Counsel Services* v. *Chief Justice of the Trial Court*, 484 Mass. 431, 449, 142 N.E.3d 525 ("Following any arrest during the COVID-19 state of emergency, and until further order of this court, a judicial officer should consider the risk that an arrestee either may contract COVID-19 while detained, or may infect others in a correctional institution, as a factor in determining whether bail is needed as a means to assure the individual's appearance before the court. Given the high risk posed by COVID-19 for people who are more than sixty years of age or who suffer from a [high risk] condition as defined by the [Centers for Disease Control and Prevention], the age and health of an arrestee should be factored into such a bail determination. This is an additional, temporary consideration beyond those imposed by the relevant bail statutes . . . and by due

process principles." (Citation omitted.)), modified on other grounds, 484 Mass. 1029, 143 N.E.3d 408 (2020). While we do not require a crisis before we take action, we have a strong preference for a better understanding as to whether other pretrial detainees are similarly situated as the defendant claims to be.

The petition for certification is dismissed.

[1] Practice Book § 78a-1 provides: "Any accused person or the state, aggrieved by an order of the Superior Court concerning release, may petition the Appellate Court for review of such order. Any such petition shall have precedence over any other matter before the Appellate Court and any hearing ordered by the court shall be held expeditiously with reasonable notice.

"Petitions for review of bail must conform to the requirements for motions for review set forth in Section 66-6 and are subject to transfer to the Supreme Court pursuant to Section 65-3."

[2] General Statutes § 54-63g provides: "Any accused person or the state, aggrieved by an order of the Superior Court concerning release, may petition the Appellate Court for review of such order. Any such petition shall have precedence over any other matter before said Appellate Court and any hearing shall be heard expeditiously with reasonable notice."

[3] There may be other procedural approaches that would lead to review of this claim. For example, General Statutes § 51-199 (c) authorizes us to transfer to our court "a cause in the Appellate Court," which includes a motion for review of a bail decision initially brought in the Appellate Court pursuant to § 54-63g. See *State* v. *McCahill*, supra, 261 Conn. 503 ("our transfer authority by way of § 51-199 (c) is not limited to a formal appeal, but encompasses causes"). General Statutes § 52-265a provides another route by which this court could review a trial court's denial of a bail modification request. Section 52-265a (a) permits "any party to an action who is aggrieved by an order or decision of the Superior Court in an action which involves a matter of substantial public interest and in which delay may work a substantial injustice, [to] appeal under this section from the order or decision to the Supreme Court within two weeks from the date of the issuance of the order or decision." This court's decision in *Ayala* followed just that procedure. See *State* v. *Ayala*, supra, 222 Conn. 341. In addition, the conditions of the defendant's confinement may conceivably be challenged in a separate proceeding through a petition for a writ of habeas corpus. See General Statutes § 52-466. Finally, our long-standing jurisprudence governing appellate jurisdiction also provides a potential avenue for this court to exercise review over a bail determination, because our precedent allows us to treat an interlocutory order as a final judgment for purposes of appeal when the order "so concludes the rights of the parties that further proceedings cannot affect them." (Internal quotation marks omitted.) *Sena* v. *American Medical Response of Connecticut, Inc.*, 333 Conn. 30, 41, 213 A.3d 1110 (2019), quoting *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). This doctrine, which is embodied in the second prong of *Curcio*, "focuses on the nature of the right involved." (Internal quotation marks omitted.) *Sena* v. *American Medical Response of Connecticut, Inc.*, supra, 41. We offer no opinion as to whether any of these potential procedural opportunities would succeed in the Appellate Court or in the trial courts of this state. We elaborate on our dismissal of the petition before us simply to state that the posture of this particular case impedes our direct review. Other cases might reach a different outcome.

[4] The record is silent as to whether the trial court was provided with any information about the relevant conditions at the correctional facility where the defendant was being held, and the status of COVID-19 within that facility. In addition, although the record does not reflect that the trial court expressly considered the potential risks of the COVID-19 pandemic in denying the motion for bond modification, it is hard to imagine that trial judges operating in courtrooms and conditions designed to address the risk of contagion would not take such considerations into account in making decisions relating to bond or bail.